UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

MICHAEL RAYMOND MORENCY and          :
ROEUTH MORENCY, husband and wife,    :
                 Plaintiffs,         :
                                     :
            v.                       :          No. 5:19-cv-5304
                                     :
CITY OF ALLENTOWN, ALLENTOWN         :
POLICE DEPARTMENT, CHIEF OF          :
POLICE TONY ALSLEBEN, OFFICER        :
DIEHL, SERGEANT FLORES, and          :
OFFICER ERIC BLOOD,                  :
                 Defendants.         :

_____

**O P I N I O N**
**Defendants' Motion for Judgment on the Pleadings, ECF Nos. 14, 24—GRANTED, in part**

**Joseph F. Leeson, Jr.**                              **April 22, 2020**
**United States District Judge**

## I.    INTRODUCTION

This action was commenced by husband and wife Plaintiffs, Michael Raymond Morency and Roeuth Morency (collectively, "Plaintiffs"), against the City of Allentown, Pennsylvania ("the City"), the Allentown Police Department, and several of its police officers (collectively, "Defendants"). Plaintiffs allege myriad civil rights violations stemming from the arrest and prosecution of Michael Morency for simple assault and disorderly conduct, charges which were subsequently dropped. Defendants have moved for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asking that the Court dismiss several of Plaintiffs' claims based on the presence of probable cause to arrest, the issuance of an arrest warrant, and the officers' entitlement to qualified immunity. For the reasons set forth below, Defendants' motion for partial judgment on the pleadings is granted, in part.

## II.     BACKGROUND

### A.     Facts alleged in the Amended Complaint[1]

Plaintiffs aver that on June 14, 2018, at approximately 11:00 p.m., Michael Morency was on his porch when he observed two teenage males playing soccer in his yard, using his car as a backstop.  *See* Plaintiffs' Amended Complaint ("Am. Compl.") [ECF No. 19] ¶ 10.  When Morency[2] told the two teenagers to leave his property, one of the two teenagers—who Plaintiffs state was the son of their neighbor, Hector Sanchez—kicked the soccer ball one final time against Morency's car, causing the ball to land in Plaintiffs' hedge against their  house.  *See id.* ¶¶ 11-12.  Morency jumped off the porch, moving to retrieve the ball, and collided with Hector Sanchez's son, who was also moving to retrieve the ball, and "who land[ed] on his buttocks" as a result of the collision.  *Id.* ¶ 13.  After this, Hector Sanchez's son began uttering threats against Morency that he would "have [his] father give [Morency] a beating."  *Id.* ¶ 15.

Several minutes later, Hector Sanchez came to Plaintiffs' property, stood in their yard, and began yelling at Michael Morency, who was on his porch smoking a cigarette.   *See* Am. Compl. ¶ 17.  Plaintiffs state that Morency told Sanchez that the contact with his son was accidental and that his son should not have been playing on Plaintiffs' property.  *See id.* ¶ 18.  At this point, according to the Amended Complaint, Hector Sanchez began advancing on Morency

---

[1]     These facts are drawn from the Amended Complaint, which is substantively identical to the initial Complaint.  The allegations are accepted as true, with all reasonable inferences being drawn in Plaintiffs' favor.  *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018).   The Court's recitation of the allegations of the Amended Complaint generally does not include conclusory assertions or legal contentions, neither of which need be considered by the Court in determining the viability of Plaintiffs' claims.  *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

[2]     Unless otherwise noted, the use of "Morency" in the singular refers to Michael, rather than Roeuth Morency.

in a threatening manner, climbing the steps of Plaintiffs' porch with raised, clenched fists.  *See id*. ¶ 19.  Morency warned Sanchez twice to back off and leave his property, before "making a defensive draw of a handgun from his pocket; holding it down at his side as Hector Sanchez climbed the steps."  *Id*. ¶¶ 20-21.  The Amended Complaint avers that Morency never pointed the handgun at Hector Sanchez, that Morency had a license to legally carry firearms, and that the firearm was legally owned and registered to him.  *See id*. ¶¶ 22-24.  Upon seeing the firearm, Hector Sanchez immediately fled the scene.  *See id*. ¶ 25.

At approximately 12:01 a.m. the same night, Allentown police officers, including Officers Diehl and Blood, came to Plaintiffs' property and ordered Michael Morency out of his home "with [his] hands up."  Am. Compl. ¶ 26.  According to the Amended Complaint, Morency "calmly refused" this command, to which the officers responded by stating that he must come with them and that they were not going to listen to anything he had to say.  *Id*. ¶¶ 27-28.  Michael Morency then stated that, as they were not going to listen to him anyway, they needed to vacate his property.  *See id*. ¶ 29.  Plaintiffs aver that at this point, Officer Diehl began shaking the screen door and trying to force entry while stating, "he's close enough to outside, he's coming with us."  *Id*. ¶¶ 30-31.  Morency responded by telling the officers to "have a nice day," after which he shut the door.  *Id*. ¶ 32.

The next morning, June 15, 2018, Michael Morency left his home in his vehicle, and, according to the Amended Complaint, within one block of his home, was pulled over by three Allentown police cruisers.  *See* Am. Compl. ¶ 34.  Importantly, Plaintiffs aver that Sergeant Flores told Michael Morency at this time that the police did not have a warrant for his arrest yet, but that they were going to apply for one.  *Id*. ¶ 35.  Morency was taken to the Allentown Police Station, where Officer Diehl seized his property consisting of one handgun, one holster,

ammunition, $35 in cash, and a cigarette lighter.  *See id*. ¶ 36.  Plaintiffs claim that Morency was

then incarcerated in the Lehigh County Jail, and "[a]n arrest warrant was subsequently issued."

*Id*. ¶¶ 37-38.  According to the Amended Complaint, "Defendant Officers did repeatedly

question [Morency], even after [he] demanded an attorney," and he was never read his Miranda

rights.  *Id*. ¶¶  39-40.  Plaintiffs aver that Morency only learned what the charges against him

were—two counts of simple assault and one count of disorderly conduct—during a bail hearing

at the jail by video conference.  *See id*. ¶¶ 41, 43.  Similarly, the Amended Complaint claims

Morency was not provided with any documents concerning the charges against him until

approximately fourteen hours after his arrest.  *See id*. ¶ 42.

Plaintiffs allege several deficiencies with the affidavit of probable cause filed by Officer

Blood in support of Michael Morency's arrest.[3]  Specifically, they state that the affidavit (1)

"failed to indicate that [Morency] had told Hector Sanchez's son to stop kicking the ball at his

vehicle and that Sanchez's son continued to kick the ball against Plaintiffs' vehicle," Am.

Compl. ¶ 46; (2) "failed to indicate that it was after Sanchez's son was warned to stop kicking

the ball at Plaintiffs' vehicle and . . . defied the warning . . . that [Morency] and Sanchez's son

collided," *id*. ¶ 47; (3) incorrectly "indicated that Sanchez was on the sidewalk, whereas,

[Morency] states and avers that Sanchez was ascending the Plaintiffs' front steps to the porch

with his raised, clenched fists," *id*. ¶ 48; (4) "contain[ed] only information provided by Hector

Sanchez, Sr.," *id*. ¶ 49; and (5) "stat[ed] that a Firearms Ownership Request found that Michael

Morency owned six (6) firearms," when it was clear that at least two and possibly three

---

[3]      It is unclear when this affidavit was filed, and whether it was filed in support of an arrest
warrant or in support of a warrantless, probable cause arrest.

individuals were listed on the Firearms Ownership Request Record of Sale Query, *id*. ¶¶ 53-57.[4]
Similarly, Plaintiffs contend that the police failed to perform any investigation to corroborate
Hector Sanchez's allegations, failed to examine the evidence at the scene, failed to review video
footage from a police camera stationed one block away.  *See id*. ¶¶ 50-52.

Plaintiffs allege that while Michael Morency was incarcerated at the Lehigh County Jail,
two uniformed Allentown police officers went to Plaintiffs' home and "threatened and
intimidated [Roeuth Morency] . . . . [t]hen proceeded to ransack the home without Plaintiffs'
consent."  Am. Compl. ¶ 64.  According to the Amended Complaint, these officers did not
present a search warrant, and proceeded to take from the home items including two handguns,
ammunition for the handguns, and $2,000 in cash from the Plaintiffs' safe.  *See id*. ¶ 67.  It is
alleged that no receipt was provided to Roeuth Morency for the items taken from Plaintiffs'
home.  *See id*. ¶ 68.

At his bail hearing, the Allentown Police requested that Michael Morency not be
permitted to live at his home with his wife and family.  Am Compl. ¶ 69.  During the hearing, the
presiding magistrate referenced Michael Morency owning six firearms—information Plaintiffs
claim was knowingly false and was intentionally provided to the court.  *See id*. ¶ 70.  On June
16, 2018, Morency was bailed out of the Lehigh County Jail by his wife.  *See id*. ¶ 71.
Subsequently, on or about July 3, 2018, his defense counsel petitioned the court to strike the bail

---

[4]     The Amended Complaint states that based on the dates of birth listed on the Firearms
Ownership Request Record of Sale Query, it is clear that the Request listed several individuals
named Michael Morency, and therefore it should have been clear that not all six firearms on the
Request were Plaintiff's.  *See id*. ¶ 57.  The Amended Complaint also alleges that Michael
Morency received a copy of the Request upon his release from jail, which had circled the two
firearms that are actually Michael Morency's, therefore indicating that Officer Blood likely knew
only two of the firearms listed were his.  *See id*. ¶¶ 59-60.  Plaintiffs' claim that Michael
Morency is the legal owner of three firearms in total, and owner of only two of the handguns
listed on the Request.  *See id*. ¶¶ 62-62.

condition preventing Morency from residing in his home, which was removed on the same day. *See id*. ¶¶ 72-73.   Plaintiffs aver that as a result of the bail condition preventing him from residing with his family for eighteen days, Morency was required to spend a large sum of money to pay for food and lodging, and was limited in the amount of time he could spend with his family. *See id*. ¶¶ 74-76.

At a hearing held on July 26, 2018, all charges against Morency were dismissed. *See* Am. Compl. ¶ 77.  The Amended Complaint avers that despite hand delivering a demand letter for return of his property on September 18, 2019, as of the commencement of the instant action, none of the possessions taken from Plaintiffs' home—including $2,000 cash and two firearms with ammunition—have been returned. *See id.* ¶¶ 78-79.

Based on the above allegations, Plaintiffs' Amended Complaint purports to assert the following twelve causes of action:  (1) malicious prosecution, brought by Michael Morency, against Officer Eric Blood; (2) false arrest, brought by Michael Morency, against Officer Eric Blood; (3) false imprisonment, brought by Michael Morency, against Officer Eric Blood; (4) false arrest, brought by Michael Morency, against Sergeant Flores;[5] (5) violation of Michael Morency's constitutional rights,  against Allentown Police Chief Tony Alsleben;[6] (6) violation of Michael Morency's constitutional rights, against the City of Allentown;[7] (7) loss of consortium,

---

[5]     Although this claim is titled "False Arrest," within it Plaintiffs assert several alleged constitutional violations, including unlawful search and failure to read Michael Morency his *Miranda* rights before questioning him.  *See* Am. Compl. ¶¶ 102-04.

[6]     "Count V" of the Amended Complaint is titled simply "Michael Raymond Morency v. Tony Alsleben, Police Chief of the City of Allentown," and does not identify any particular cause(s) of action; rather, this count is framed in terms of general grievances, such as "failing to perform a proper, full and complete investigation," Am. Compl. ¶ 114, "filing unwarranted charges," *id*. ¶ 115, and "'enhancing' the Affidavit of Probable Cause and Police Criminal Complaint by using" only limited or one-sided information, *id*. ¶ 116.

[7]     "Count VI" of the Amended Complaint is titled "Michael Raymond Morency v. City of Allentown Pursuant to 42 U.S.§1983 [sic]."  In this Count, Plaintiffs appear to be attempting to

brought by Michael Morency, against Officer Blood and the City of Allentown;[8] (8) conspiracy

to commit constitutional violations, brought by Michael Morency, against Officer Blood, Officer

Diehl, and Sergeant Flores; (9) violation of Roeuth Morency's constitutional rights, against Eric

Blood;[9] (10) violation of Roeuth Morency's constitutional rights, against the City of

Allentown;[10] (11) false imprisonment, brought by Michael Morency, against Allentown Chief of

Police Tony Alsleben, Officer Diehl, Officer Blood, and Sergeant Flores;[11] and (12) intentional

infliction of emotional distress, brought by Plaintiffs collectively, against the City of Allentown,

Allentown Police Chief Tony Alsleben, Officer Diehl, Officer Blood, and Sergeant Flores.  *See*

Am. Compl. ¶¶ 81-191.

### B.     Procedural Background

Plaintiffs filed the initial Complaint in this action on November 12, 2019.  *See* ECF No.

1.  Defendants filed their Answer to the Complaint on January 24, 2020.  *See* ECF No. 11.  On

February 5, 2020, Plaintiffs filed a document titled "Plaintiffs' Answer to Defendants' Answer to

Complaint with Affirmative Defenses."  ECF No. 13.[12]  On March 4, 2020, Defendants filed the

---

assert the same causes of action brought against the individual Defendants against the City.  For
reasons discussed in detail below, constitutional claims brought against the City (Count VI) are
no different than constitutional claims brought against the Police Chief in his official capacity
(Count V).

[8]        The Amended Complaint states that this claim is brought pursuant to 42 U.S.C. § 1983
for violation of Michael Morency's rights under the Fourth and Fourteenth Amendments to the
Constitution.  *See* Am. Compl. ¶ 143.

[9]        "Count IX" is titled simply "Roeuth Morency v. Eric Blood Pursuant to 42 U.S. §1983
[sic]."  Similar to other claims, Count IX is styled in general terms and it is not totally clear what
specific causes of action Roeuth Morency is asserting.

[10]       "Count X" is titled simply "Roeuth Morency v. City of Allentown Pursuant to 42 U.S.
§1983 [sic]."  This claim references the Fourth and Fourteenth Amendments to the Constitution.
*See* Am. Compl. ¶¶ 172-73, 176.

[11]       This claim appears to be, at least in part, duplicative of earlier claims.

[12]       Plaintiffs re-filed this document as against the Answer to the Amended Complaint on
March 31, 2020.  *See* ECF No. 25.

instant motion for partial judgment on the pleadings.  *See* ECF No. 14.  The Court saw counsel

for the parties on March 10, 2020 for an initial Rule 16 conference, at which the Court instructed

counsel for Plaintiffs to re-file the Complaint to correct the clear mis-numbering of its counts.

*See* ECF Nos. 16, 17.  The Amended Complaint, which corrected the initial Complaint's errors

and is otherwise substantively identical to it, was filed on March 16, 2020.[13]  *See* ECF No. 19.

Plaintiffs filed their opposition to the motion for partial judgment on the pleadings on March 20,

2020.  *See* ECF No. 22.[14]  Defendants did not file a reply memorandum in further support of

their motion for partial judgment on the pleadings.

## III.   LEGAL STANDARD:  MOTIONS FOR JUDGMENT ON THE PLEADINGS

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed

to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion."

*Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017).  District courts follow a two-step

approach when deciding such motions.  First, they are to "identify [ ] pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009); *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007))); *Thourot v. Monroe Career & Tech. Inst.*, No. CV 3:14-

1779, 2016 WL 6082238, at *2 (M.D. Pa. Oct. 17, 2016) (explaining that "[a] formulaic

recitation of the elements of a cause of action" alone will not survive a motion to dismiss).

---

[13]    On March 27, 2020, Defendants filed both an Answer to the Amended Complaint, as well as a second "motion," incorporating their initial motion as against the Amended Complaint.  *See* ECF Nos. 23, 24.

[14]    The same document was re-filled on March 31, 2020.  *See* ECF No. 27.  Also on March 31, 2020, Plaintiffs filed an additional two-page document which purports to oppose the motion for partial judgment on the pleadings.  *See* ECF No. 26.  It is unclear why this document was submitted.

Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  This standard, commonly referred to as the "plausibility standard," "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556-57).  It is only where the "[f]actual allegations . . . raise a right to relief above the speculative level" that the plaintiff has stated a plausible claim.[15] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

In adjudicating a motion for judgment on the pleadings, the scope of what may be considered is, as when adjudicating a motion to dismiss for failure to state a claim, necessarily constrained:  a court may generally not consider any matters outside of the pleadings.  *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 257 (3d Cir. 2004).  District courts may, however, also consider matters of public record, as well as undisputedly authentic documents if the pleadings are based upon these documents." *United States v. Gertsman*, No. 15-8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)).

---

[15]     As the Supreme Court has stated, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679

## IV.     DISCUSSION

Defendants seek the dismissal of claims one, two, and three—malicious prosecution, false arrest, and false imprisonment against Officer Blood—on the basis that Officer Blood had probable cause to arrest and imprison Michael Morency for the charged offenses. *See* Defendants' Memorandum in Support of their Motion ("Defs.' Mem.") [ ECF No. 14] at 5-7. They also seek the dismissal of claim four—false arrest, unlawful search, and Miranda violations, against Sergeant Flores—because "there is no dispute that a warrant was issued for Plaintiff Husband's arrest." *Id*. at 7.  Defendants seek dismissal of claims eight and twelve — conspiracy to violate Michael Morency's constitutional rights and intentional inflection of emotional distress, respectively—because, they argue, there were no underlying constitutional violations. *Id*. at 9.  They additionally seek dismissal of claims nine and ten—Roeuth Morency's claims of intentional inflection of emotional distress—because, they again contend, there were no underlying constitutional violations which could support this claim.  *Id*.  Finally, Defendants argue that at a minimum, all claims against Officer Blood and Sergeant Flores must be dismissed because these Defendants are entitled to qualified immunity.[16]  *See id*. at 10-12.

Because they are related, the Court will first address the claims of false arrest, false imprisonment, and malicious prosecution brought by Michael Morency against the several individual Defendants, as they appear in claims one, two, three, four, and eleven.

---

[16]     Defendants do not appear to seek qualified immunity for the remaining individual Defendant, Officer Diehl.

A.      **False arrest, false imprisonment, malicious prosecution**

    *1.      Legal principles*

To state a claim for false arrest under 42 U.S.C. § 1983[17] for violation of one's right to be

free from unreasonable seizure under the Fourth Amendment, a plaintiff must allege (1) that he

was arrested, and (2) that the arrest was made without probable cause.  *James v. City of Wilkes-*

*Barre*, 700 F.3d 675, 680 (3d Cir. 2012).  Similarly, to state a claim for false imprisonment, a

plaintiff must allege that (1) he was imprisoned, and (2) his imprisonment was unlawful.

*Glaspie v. Cty. of Gloucester*, No. CV 15-7691, 2018 WL 4179461, at *4 (D.N.J. Aug. 31,

2018).  "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under

§ 1983 for false imprisonment based on a detention pursuant to that arrest."  *Groman v. Twp. of*

---

[17]      Title 42 U.S.C. § 1983 is a mechanism for the redress of deprivations of substantive
constitutional and statutory rights by individuals acting under the imprimatur of state law.  The
statute provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any state . . . subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper proceeding for
> redress . . . .

Importantly, § 1983 "is not itself a source of substantive rights"; rather, the statute is a "method
for vindicating federal rights elsewhere conferred by those parts of the United States Constitution
and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979);
*Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009)
(explaining that Section 1983 "is a vehicle for imposing liability against anyone who, under
color of state law, deprives a person of 'rights, privileges, or immunities secured by the
Constitution and laws'" (quoting *Maine v. Thiboutot,* 448 U.S. 1, 4-6 (1980))); *see Three Rivers*
*Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 422 (3d Cir. 2004)
("Once the plaintiff establishes the existence of a federal right, there arises a rebuttable
presumption that the right is enforceable through the remedy of § 1983.").  Because there are no
substantive rights created by § 1983, Plaintiffs' claim that Defendants "violated [Michael
Morency's] civil rights under 42 U.S.§1983 [sic]," Am. Compl. ¶ 92, is legally incorrect,
because he has no civil rights "under" §1983.

*Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).  "Thus, a claim of false imprisonment in this context is derivative of a claim for arrest without probable cause."  *Wynder v. Womack*, No. CV 17-13239, 2018 WL 4846677, at *4 (D.N.J. Oct. 5, 2018).

A claim for malicious prosecution is a slightly different type of claim.  "[U]nlike the related cause of action for false arrest or imprisonment," malicious prosecution "permits damages for confinement imposed pursuant to legal process."  *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).  To plead a claim of malicious prosecution, a plaintiff must allege (1) the defendants initiated a criminal proceeding, (2) the proceeding ended in the plaintiff's favor, (3) the proceeding was initiated without probable cause, (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[18]  *Glaspie*, 2018 WL 4179461, at *5; *see McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009)).  "Police officers (as opposed to prosecutors) may be liable for malicious prosecution if they 'conceal or misrepresent material facts' to the prosecutor."  *Thomas v. City of Philadelphia*, 290

---

[18]     There is a lively discussion in the current case law regarding the extent to which plaintiffs can assert § 1983 claims of malicious prosecution for alleged violations of rights other than those conferred by the Fourth Amendment, such as, for example, malicious prosecution for alleged violations of Fourteenth Amendment procedural due process rights.  *See, e.g., Lewis v. City of Philadelphia*, No. CV 19-2847, 2020 WL 1683451, at *5 (E.D. Pa. Apr. 6, 2020) ("Defendants seek dismissal of the malicious claim to the extent it relies on the Fourteenth Amendment, arguing that malicious prosecution claims that sound in the Fourteenth Amendment are barred as a matter of law . . . .  The Court disagrees with Defendants' position that [the] Fourteenth Amendment malicious prosecution claim is categorically unavailable.  However, [ ] the legal landscape on this question is complicated and uncertain . . . ."); *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 380 (E.D. Pa. 2018) (observing that "case law in this Circuit may be described as inconsistent" on the issue).

Although Plaintiffs do not specify, the Court assumes Michael Morency grounds his malicious prosecution claim on alleged violations of his Fourth Amendment rights.  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("We hold that it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim [for malicious prosecution] must be judged.").

F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)).  "In particular, an officer is liable if he 'fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'"  *Thomas*, 290 F. Supp. at 379 (quoting *Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017)).

The element common to all three causes of action is the absence of probable cause. "Probable cause exists 'when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'"  *Finnemen*, 267 F. Supp. 3d at 646 (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).  The probable cause inquiry is "entirely objective."  *Halsey*, 750 F.3d at  299; *see Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 123 (D.N.J. 2017) ("In determining whether probable cause existed at the time of the arrest, the arresting officer's state of mind (except for the facts that he knows) . . . [is] irrelevant." (quotations omitted)).  While "a defendant is insulated from false arrest liability so long as '[p]robable cause . . .exist[ed] as to any offense that could be charged under the circumstances," *Akins v. City of Erie Police Dep't*, No. 18-395, 2020 WL 838564, at *4 (W.D. Pa. Feb. 20, 2020) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)), a "cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which . . . is likely to have placed an additional burden on the plaintiff."  *Lopez v. CSX Transp., Inc.*, No. CIV.A.

06-1802, 2007 WL 2212858, at *5 (D.N.J. July 31, 2007) (quoting *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007)).

        **2.**      ***Application to the Amended Complaint***

           **a.**      **Claims two and three:  false arrest and imprisonment against Officer Blood**

Michael Morency states he was charged with (1) 18 PA. CONS. STAT. § 2701(a)(1), Simple Assault; (2) 18 PA. CONS. STAT. § 2701(a)(3), Simple Assault; and (3) 18 PA. CONS. STAT. § 5503(a)(4), Disorderly Conduct.  Am. Compl. ¶ 43.  Dispensing with consideration of the grading of the several offenses, which is not relevant to the instant inquiry,[19] a person is guilty of simple assault under 18 PA. CONS. STAT. § 2701(a)(1) if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;" a person is guilty of simple assault under 18 PA. CONS. STAT. § 2701(a)(3) if he "attempts by physical menace to put another in fear of imminent serious bodily injury;" and a person is guilty of disorderly conduct under 18 PA. CONS. STAT. § 5503(a)(4) if he "creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

As to claims one, two, and three, Defendants argue that probable cause existed to arrest, imprison, and prosecute Michael Morency for the charged offense.  Defendants state that "Officers Diehl and Blood spoke with both the victims – the child and the father," who "reported that Plaintiff Husband shoved the child twice and displayed his firearm to the child's father threatening him to get off of his property."  Defs.' Mem. at 7.  Moreover, Defendants contend, "Plaintiff Husband does not dispute that he made contact with the child and that he did display a

---

[19]    *See Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 761 n.26 (D.N.J. 2016), *on reconsideration in part*, No. CV 12-4165, 2016 WL 3638108 (D.N.J. July 7, 2016). Additionally, Plaintiffs do not present any argument in support of improper grading of the charged offenses.

firearm to the child's father." *Id*.  Lastly, Defendants state that "Officers determined that the Plaintiff Husband did in fact own firearms, therefore, further corroborating the statement from the child's father as to what occurred." *Id*.

The Court finds that Michael Morency has failed to state a viable false arrest or false imprisonment claim against Officer Blood, because the Amended Complaint fails to plausibly allege that Officer Blood lacked probable cause to believe Michael Morency was guilty of simple assault under 18 PA. CONS. STAT. § 2701(a)(1).  The Court reaches this conclusion on the following reasoning.  Michael Morency has alleged that in attempting to retrieve the soccer ball at the same time as Hector Sanchez's son on the evening of June 14, 2018, the two collided, with the teenager "landing on his buttocks" as a result of the collision.  Am. Compl. ¶ 13.  Although it does not appear to be affirmatively pleaded, it is nonetheless clear from the allegations that the police officers investigating the incident spoke with Hector Sanchez and possibly his son about the incident.  *See id*. ¶¶ 45-50.  The officers were able to properly rely on this information in forming an opinion as to what happened.  *See Waters v. Cheltenham Twp.*, 700 F. App'x 149, 153 (3d Cir. 2017) ("When an officer has received his information from some person—normally the putative victim or an eye witness[sic]—who it seems reasonable to believe is telling the truth, he has probable cause." (quoting *Sharrar v. Felsing*, 128 F.3d 810, 818-19 (3d Cir. 1997))).  Moreover, Michael Morency stated that he declined to speak with the police on the evening of the incident about what happened.  *See id*. ¶¶ 26-32.

Based on the information the police, and in particular Officer Blood, were almost certain to have at the time of Michael Morency's arrest—the account of the incident given by Hector Sanchez and possible his son, and no competing account from Morency himself—and in light of the version of the incident recounted by Plaintiffs in the Amended Complaint—that there was a

collision between Morency and the younger Sanchez resulting in the younger Sanchez's falling

down—the Court finds that Plaintiffs have not plausibly alleged that Officer Blood lacked

probable cause to effect Michael Morency's arrest for simple assault under 18 PA. CONS. STAT. §

2701(a)(1).  *See Wheeler v. Wheeler*, 639 F. App'x 147, 150 (3d Cir. 2016) (dismissing a false

arrest claim where plaintiff failed to "plead facts that make it plausible that [the arresting officer]

lacked probable cause to arrest him").   To the Court, it is simply implausible that the account of

the incident given to the investigating officers by Hector Sanchez and possibly his son was any

less incriminating than the account claimed by Plaintiffs themselves in the Amended Complaint,

which the Court accepts as true.[20]  And Plaintiffs' account in the Amended Complaint is itself

capable of conferring probable cause to believe that Michael Morency "attempt[ed] to cause or

intentionally, knowingly or recklessly cause[ed] bodily injury to another."  18 PA. CONS. STAT. §

2701(a)(1).[21]

_____

[20]     *See Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) ("An arrest [is] made without probable cause if 'at the moment the arrest [is] made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'  In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime. (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) and citing *Johnson v. Campbell,* 332 F.3d 199, 211 (3d Cir. 2003))).

[21]     Section 2701 was derived from Section 211.1 of the Model Penal Code.  The committee notes accompanying Section 211.1 of the MPC state as follows:  "This section eliminates the common law distinctions between assault, battery and mayhem and classifies the crimes on the basis of the seriousness of the harm done, intended or risked."  Consistent with § 2701's elimination of the distinction between "assault" and "battery," it follows that minimal contact is sufficient to satisfy the *actus reus* component of simple assault.  *See Com. v. Gregory*, 132 Pa. Super. 507, 512, 1 A.2d 501, 503 (1938) ("The least touching of another's person willfully, or in anger, is a battery. . . . [T]he touching of, or injury to, another must be done in an angry, revengeful, rude or insolent manner so as to render the act unlawful" (quotations and citations omitted)); *Com. v. Shamsud-Din*, 2010 Pa. Super. 995 A.2d 1224, 1230 (2010) (affirming conviction for simple assault where the defendant and another "were like tussling").  With respect to the required *mens rea*, "Pennsylvania simple assault violation requires a minimum *mens rea* of recklessness rather than intent."  *United States v. Otero*, 502 F.3d 331, 335 (3d Cir.

Consequently, notwithstanding the absence of an arrest warrant,[22] *see* Am. Compl. ¶ 35,

the allegations make clear that Officer Blood more than likely had probable cause to arrest

_____

2007).  The facts here support both the minimum *actus reus* element—bodily injury (minimal contact)—as well as the minimum *mens rea* element—recklessness.

[22]      Assuming that no arrest warrant was issued at the time of Michael Morency's arrest, which the Court accepts as true based on Sergeant Flores' alleged statement to Morency, the arrest appears to have been in contravention of Rule 502 of the Pennsylvania Rules of Criminal Procedure.  That Rule provides as follows:

>  Criminal proceedings in court cases shall be instituted by:
>
>  (1) filing a written complaint; or
>
>   (2) an arrest without a warrant: (a) when the offense is a murder, felony, or misdemeanor committed in the presence of the police officer making the arrest; or
>
>>  (b) upon probable cause when the offense is a felony or murder; or
>>
>>  (c) upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, *when such arrest without a warrant is specifically authorized by statute.*

PA. R. CRIM. P. 502 (emphasis added); *see United States v. Myers,* 308 F.3d 251, 256 (3d Cir. 2002) ("The Pennsylvania legislature has specifically limited the authority of police officers to make warrantless arrests for misdemeanor offenses [in Pennsylvania Rule of Criminal Procedure 502].  An officer may conduct a warrantless arrest for a misdemeanor only if the offense is committed in the presence of the arresting officer or when specifically authorized by statute.").  Simple assault is by definition a misdemeanor, *see* 18 PA. CONS. STAT. § 2701(b), and there moreover exists "no statute or rule of law authorizing a warrantless arrest for simple assault  . . . committed outside the presence of a police officer."  *Milbourne v. Baker*, No. 11-CV-1866, 2012 WL 1889148, at *6 (E.D. Pa. May 23, 2012) (citing *Com. v. Dommel*, 2005 PA Super. 333, ¶ 8, 885 A.2d 998, 1001 (2005)).  Similarly, disorderly conduct is by definition either a misdemeanor or a summary offense, *see* 18 PA. CONS. STAT. § 5503(b), and the Court is aware of no rule or statute that authorizes a warrantless arrest for this offense.

However, "[w]hile Pennsylvania Rule of Criminal Procedure 502 prohibits warrantless arrests for misdemeanors committed outside the presence of the arresting officer, Rule 502 alone does not automatically imply a similar prohibition in the United States Constitution that could become the basis for a Section 1983 claim."  *Noviho v. Lancaster Cty. Pennsylvania*, No. CV 15-3151, 2016 WL 8716672, at *3 (E.D. Pa. June 3, 2016) (quoting *Levine v. Rodden*, No. 15-cv-574, 2015 WL 2151781, at *5 (E.D. Pa. May 7, 2015)), *aff'd sub nom. Noviho v. Lancaster Cty. of Pennsylvania*, 683 F. App''x 160 (3d Cir. 2017); *see United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007) (explaining that the test for evaluating whether one's Fourth Amendment

Michael Morency for simple assault under 18 PA. CONS. STAT. § 2701(a)(1).  As a result, Morency has failed to plausibly allege that his arrest for *all three* of the charged offenses lacked probable cause, *see Akins*, 2020 WL 838564, at *4 (explaining that "a defendant is insulated from false arrest liability so long as [p]robable cause . . . exist[ed] as to any offense that could be charged under the circumstances" (quotation omitted)), and his false arrest claim against Officer Blood must fail.[23]  Moreover, because he has failed to plausibly allege the absence of probable cause for his arrest, Michael Morency's false imprisonment claim—claim three of the Amended Complaint— also fails:  his imprisonment pursuant to a constitutional arrest cannot be considered "unlawful."[24]  *See Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) ("[F]alse arrest and false imprisonment are essentially the same claim.").

> **b.     Claim one:  malicious prosecution against Officer Blood**

Michael Morency's claim for malicious prosecution against Offer Blood fares slightly better.  As noted previously, a viable claim of malicious prosecution must be supported by allegations that (1) the defendants initiated a criminal proceeding, (2) the criminal proceeding ended in the plaintiff's favor, (3) the proceeding was initiated without probable cause, (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir.

---

rights were violated "is one of federal law").  Therefore, so long as probable cause existed, a violation of Pennsylvania Rule of Criminal Procedure 502 does not give rise to a § 1983 claim.

[23]     Additionally, "[a] police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest, and has no general duty to investigate further after acquiring information sufficient to establish probable cause."  *Craig v. Collins*, No. CIV.A. 13-1873, 2013 WL 5271521, at *7 (E.D. Pa. Sept. 17, 2013) (quotations and citations omitted).

[24]     This conclusion is again subject to the caveat that the arrest appears to have run afoul of Pennsylvania Rule of Criminal Procedure 502.

2009).  Because the Court has already found that Plaintiffs' allegations fail to plausibly allege that Officer Blood lacked probable cause to arrest Michael Morency for simple assault under 18 PA. CONS. STAT. § 2701(a)(1), any claim of malicious prosecution for this offense must also fail, as it cannot be shown that the proceeding—*i.e.*, the prosecution of this charge—was initiated without probable cause.  However, this is not the end of the inquiry, for when addressing claims of malicious prosecution, each charge prosecuted must be examined individually.  *See Knorr*, 477 F.3d at 85 ("[A] cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which . . . is likely to have placed an additional burden on the plaintiff.").

The remaining two charged offenses are simple assault under 18 PA. CONS. STAT. § 2701(a)(3), which is committed when an individual "attempts by physical menace to put another in fear of imminent serious bodily injury;" and disorderly conduct under 18 PA. CONS. STAT. § 5503(a)(4), which is committed when an individual, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

### i.       *Simple assault under 18 Pa. Cons. Stat. § 2701(a)(3)*

As with the charge of simple assault under § 2701(a)(1), the allegations in the Amended Complaint are sufficient to provide Officer Blood with probable cause to believe Michael Morency committed simple assault under § 2701(a)(3).  That is, if Officer Blood were aware of the facts as alleged, he would have had probable cause to believe Michael Morency "attempt[ed] by physical menace to put another in fear of imminent serious bodily injury."  Even accepting the truth of what Morency would likely argue are mitigating factors—that (i) Morency only drew

his handgun as the result of a perceived imminent threat and after a verbal warning, (ii) Morency never pointed the weapon at Sanchez, (iii) Morency was legally licensed to carry the firearm, and (iv) the altercation occurred on Plaintiffs' property, *see* Am. Compl. ¶¶ 19-24—the elements of the offense are not negated, but remain satisfied by Morency's conduct. [25]  As the Court observed in the context of the former simple assault charge, it is simply implausible that the information Officer Blood would have possessed after speaking with Hector Sanchez would have been any less incriminating than the account presented by Plaintiffs.  It follows that because Plaintiffs' account is sufficient to confer probable cause, it is not the case that the Amended Complaint plausibly alleges that Officer Blood lacked probable cause to arrest and charge Michael Morency with simple assault under § 2701(a)(3).  The malicious prosecution claim based upon this offense must therefore fail.

### ii.       Disorderly conduct under 18 Pa. Cons. Stat. § 5503(a)(4)

Unlike the two charges of simple assault under § 2701, however, the allegations in the Amended Complaint are not, in the Court's view, capable of providing a plausible basis for

---

[25]        Although the mitigating factors presented in the allegations might support the affirmative defense of self defense, they do not negate a probable cause finding.  *See Gorman v. Bail*, 947 F. Supp. 2d 509, 523 (E.D. Pa. 2013) ("[A]s a matter of law, self-defense is not the type of affirmative defense that officers must consider or disclose in affidavits of probable cause.  In reaching this conclusion, the Court notes that claims of self-defense to an assault necessarily admit involvement in a violent altercation. Thus, self-defense is inherently an issue that must be decided at trial, not by a police officer or a judge at a hearing to issue an arrest warrant.  In other words, the forum in which to exercise a defense of self-defense, at least on the facts of this case, is at trial, not in a subsequent civil rights civil suit that challenges the sufficiency of an affidavit of probable cause upon which an arrest warrant was issued by a judge." (footnote omitted)); *but see Berrios v. City of Philadelphia*, 96 F. Supp. 3d 523, 533 (E.D. Pa. 2015) (explaining it might be possible to find self defense relevant to a probable cause determination, however, self defense "would need to be a part of the statutory language in the elements of the crime at issue in order to be considered").

probable cause to believe Michael Morency was guilty of disorderly conduct under 18 PA. CONS. STAt. § 5503(a)(4).

Plaintiffs aver in the Amended Complaint that Hector Sanchez began advancing on Michael Morency in a threatening manner, climbing the steps of Plaintiffs' porch with raised, clenched fists. *See* Am. Compl. ¶ 19. Morency states he warned Sanchez twice to back off and leave his property, before "making a defensive draw of a handgun from his pocket; holding it down at his side as Sanchez climbed the steps." *Id*. ¶¶ 20-21. Morency never pointed the handgun at Sanchez, a gun which he had a license to legally carry. *See id*. ¶¶ 23-24.

Under these facts, the Court cannot say that Officer Blood would have had probable cause to believe Morency was guilty of disorderly conduct; correspondingly, the Court finds that Morency plausibly alleges that Blood did not have probable cause to believe he was guilty of disturbing the peace. This is because, as alleged by Plaintiffs, the altercation occurred exclusively on Plaintiffs' private property, which is not open to the public. As a result, there was no causing or risk of causing "*public* inconvenience or alarm" as required by the statute. *See Com. v. Beattie*, 411 Pa. Super. 177, 185-86 (1991) ("To convict for disorderly conduct the Commonwealth must establish that the accused *intended to cause,* or *recklessly* created a *risk* of causing *public* inconvenience or alarm. 18 PA.CONS. STAT. § 5503. 'Public' is defined in the statute as, 'affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.' 18 PA. CONS. STAT. § 5503(c). The investigative stop occurred on [defendant's] *private property,* at the top of his private driveway, away from the street or public

highway. . . . Consequently, the Commonwealth has failed to prove a vital element of the offense

charged." (emphasis in original)).

Admittedly, the Court does not know from the pleadings what information Officer Blood

possessed as a result of his investigation.  Because it is unknown what Officer Blood knew, the

Court must accept the facts as alleged.  If these facts were known to Officer Blood as alleged,

they would not have supported a finding of probable cause.  That is, if Sanchez had informed

Officer Blood that the altercation occurred on Plaintiffs' private property, as the Amended

Complaint alleges, Officer Blood would have lacked probable cause to believe Morency was

causing "*public* inconvenience or alarm."  18 PA. CONS. STAT. § 5503(a)(4) (emphasis added).

At this early juncture then, the Court finds this element of Michael Morency's malicious

prosecution claim—that the proceeding was commenced without probable cause—to have been

plausibly alleged with respect to his prosecution for disorderly conduct under § 5503(a)(4) for

the reasons discussed above.  *See Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 125

(D.N.J. 2017) (stating with respect to probable cause, on a motion to dismiss, that "at this early

juncture, it is unclear what was known by [the arresting officer] at the time of Plaintiff's arrest.

On the face of the Complaint, the Court cannot determine what [the officer] knew upon arrival at

the scene"); *Issa v. Delaware State Univ.*, 268 F. Supp. 3d 624, 635 (D. Del. 2017) ("While the

police reports may provide a contrary narrative, the Court at this stage must take [plaintiff's]

allegations in the Amended Complaint as true.").

With respect to the other four elements of a malicious prosecution claim against Officer

Blood—that Officer Blood initiated a criminal proceeding, the criminal proceeding ended in

Michael Morency's favor, Officer Blood acted maliciously or for a purpose other than bringing

Morency to justice, and that Morency suffered deprivation of liberty consistent with the concept

of seizure as a consequence of a legal proceeding—the Court finds that they have been alleged in the Amended Complaint.  It is clearly alleged that Officer Blood initiated a criminal proceeding against Morency, *see, e.g.*, Am. Compl. ¶¶ 43, 45-49, that the proceeding ended in Morency's favor when the charges were dropped, *see id.* ¶ 77, and that Morency suffered a substantial deprivation of his liberty as a result of the proceeding, *see id.* ¶¶ 37, 71, 74.

As to the final, and perhaps most significant element of this claim, the Court finds that the Amended Complaint contains sufficient allegations that Officer Blood acted maliciously or for a purpose other than bringing Michael Morency to justice.  The Amended Complaint avers that Officer Blood knowingly or recklessly provided false information in support of Morency's prosecution:  specifically, Officer Blood knew or should have known that multiple individuals named Michael Morency appeared on the Firearms Ownership Request Record of Sale Query, such that Plaintiff Morency was not the owner of the six firearms listed on the Query.  *See* Am. Compl. ¶¶ 53-62. Nevertheless, Officer Blood stated in his sworn probable cause affidavit that Morency owned six firearms, *see id.* ¶ 55, and this information was referenced at Morency's bail hearing, *see id.* ¶ 70.

Because Michael Morency has plausibly alleged all the elements of a malicious prosecution claim against Officer Blood for Blood's prosecution of Morency for disorderly conduct under 18 PA. CONS. STAT. § 5503(a)(4), this claim survives Defendants' motion.[26]

---

[26]  Additionally, as noted, it is not clear if and when a proper arrest warrant issued. Although the Amended Complaint states that Sergeant Flores told Michael Morency at the time of his arrest that no warrant had yet issued but that one was being applied for, *see* Am. Compl. ¶ 35, counsel for Defendants bases his argument in support of the motion for judgment on the pleadings, at least in part, on the argument that "there is no dispute that a warrant was issued for Plaintiff Husband's arrest."  Defs.' Mem. at 7.  However, there appears to indeed be a dispute as to *when* such a warrant issued.

Moreover, although Defendants' Answer contends that Officer Blood received approval from the District Attorneys' office before charging Michael Morency, *see, e.g.*, Defendants'

      c.      **Claim four:  false arrest, false imprisonment, and other claims against Sergeant Flores**

Claim four of the Amended Complaint asserts false arrest and imprisonment, unlawful search, and *Miranda* violations against Sergeant Flores.  As for Michael Morency's false arrest claim against Flores, this claim fails for the same reason his false arrest claim against Officer Blood fails:  the Amended Complaint fails to plausibly allege that Officer Blood lacked probable cause to believe Morency had committed a crime.  The fact that the same claim is directed at Sergeant Flores does not save it.  Because, as discussed above, it is more than likely that Officer Blood possessed probable cause (and, correspondingly, that Morency fails to plausibly plead the *absence* of probable cause), Sergeant Flores was able to rely on the information almost certainly possessed by Officer Blood.[27]  *See Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ("The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who *issued* the statements possessed the requisite basis to seize the suspect. . . . [A]n

_____

Answer ("Ans.") [ECF No. 23] ¶¶ 82-90, this contention is not persuasive at this stage of the proceedings because an arrest warrant "does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).  Rather, a plaintiff can succeed on a malicious prosecution claim notwithstanding a warrant if he can show "(1) the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) such statements or omissions are material, or necessary, to the finding of probable cause."  *Giordano v. Murano-Nix*, No. CIV.A. 12-7034, 2014 WL 62459, at *5 (E.D. Pa. Jan. 8, 2014).  Therefore, dismissal of Michael Morency's malicious prosecution claim—at least with respect to the disorderly conduct charge— prior to determining whether and when an arrest warrant issued would be, in the Court's view, premature, especially in light of possible representations made by Officer Blood in support of its issuance.

[27]      Somewhat oddly, Defendants' argument on this point differs from their defense with respect to Officer Blood, which is based on the probable cause he possessed through his investigation of the incident.  Here, Defendants argue that "there is no dispute that a warrant issued for Plaintiff Husband's arrest," and for this reason he cannot be liable for false arrest or unlawful search.  Defs.' Mem. at 7.  However, as noted above, there *is* a dispute as to *when* the warrant issued.  The version of the facts the Court is obliged to accept is Plaintiffs', and Plaintiffs claim that Sergeant Flores stated at the time of the arrest that no warrant had yet issued. *See* Am. Compl. ¶35.

officer can lawfully act solely on the basis of statements issued by fellow officers if the officers

issuing the statements possessed the facts and circumstances necessary to support a finding of the

requisite basis." (emphasis in original) (citations omitted)).

Within this claim, Michael Morency also alleges that Sergeant Flores' search of him, and

his questioning of him without Morency's having been read his Miranda rights, was unlawful.

The first of these claims—for unlawful search under the Fourth Amendment—is without merit.

Because, as the Court has found, Michael Morency fails to plead a false arrest claim, it

necessarily follows that he cannot plead a claim for unlawful search, where the complained-of

search took place incident to that arrest.[28] *Cf. Forlina v. Doe*, No. CV 16-2696, 2019 WL

5188400, at *5 (E.D. Pa. Oct. 11, 2019) ("[A] search incident to a lawful custodial arrest requires

no additional justification because it is the fact of the lawful arrest which establishes the

authority to search under the Fourth Amendment."); *Arizona v. Gant,* 556 U.S. 332, 338 (2009)

(same).

As for the alleged Miranda violations, the Amended Complaint states that "Defendant

Flores did subject Plaintiff [Michael Morency] to questioning even after Plaintiff [ ] requested an

attorney," Am. Compl. ¶ 103, and "Defendant Flores failed at any time [to] read Plaintiff

[Michael Morency] his Miranda rights," *id*. ¶ 104.  These allegations do not give rise to any

specific claim under § 1983, because "[t]he prophylactic Miranda warnings [ ] are 'not

themselves rights protected by the Constitution but [are] instead measures to insure that the right

against compulsory self-incrimination [is] protected.'"  *New York v. Quarles*, 467 U.S. 649, 654,

(1984) (quoting *Michigan v. Tucker*, 417 U.S. 433, 444 (1974)).  The proper—and exclusive—

---

[28]     Of course, this is not to say that it has been established with certainty that Morency's
arrest and subsequent search were lawful; it is rather that he has failed to plausibly allege that his
arrest and subsequent search were *unlawful*.

remedy for a violation of these measures is the exclusion of the unwarranted statements at trial, not a claim for civil damages.  *See United States v. Patane*, 542 U.S. 630, 642 (2004). Accordingly, Michael Morency is unable to state any viable claim for Sergeant Flores' alleged failure to read him his Miranda rights.

> **B.  Other claims of which Defendants seek dismissal:  conspiracy, intentional infliction of emotional distress, claims brought by Roeuth Morency, and all claims against Officer Blood and Sergeant Flores based on qualified immunity**

> ### 1.  *Conspiracy*

Defendants additionally seek dismissal of the Amended Complaint's eighth claim, for conspiracy to commit constitutional violations, against Officer Blood, Officer Diehl, and Sergeant Flores, on the basis that there are no viable underlying constitutional claims upon which to premise a conspiracy claim.  *See* Defs.' Mem. at  9.

"In order to state a claim for conspiracy under section 1983, 'a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'"  *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (quoting *Gale v. Storti,* 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009)).  Additionally, "[t]o withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor." *Rosembert*, 14 F. Supp. 3d at 648 (quoting *DeJohn v. Temple University,* 2006 WL 2623274, at *5 (E.D.Pa. Sept. 11, 2006)).

Here, as discussed at length above, although Michael Morency's § 1983 claims for false arrest, false imprisonment, and malicious prosecution for simple assault fail, the Amended Complaint does state a viable claim against Officer Blood for malicious prosecution of Morency

for disorderly conduct.  Additionally, the Amended Complaint alleges that Officer Blood,

Officer Diehl, and Sergeant Flores conspired together "to create a scenario of criminal charges in

order to . . . harm Plaintiff" on the evening of June 14-15, 2018.  Am. Compl. ¶ 157.  The Court

is satisfied that these allegations state a viable claim for § 1983 conspiracy, premised upon the

malicious prosecution of Morency for disorderly conduct, and this claim survives Defendants'

motion.

> ### 2.     *Intentional infliction of emotional distress*

Defendants similarly seek dismissal of Plaintiffs' claim of intentional infliction of

emotional distress, brought against all Defendants in the Amended Complaint's twelfth claim, on

the ground that there are no viable underlying constitutional claims.  *See* Defs.' Mem. at 9.

To state a claim for intentional infliction of emotional distress, which is brought under

Pennsylvania law, a plaintiff must allege that the defendant's "(1) extreme and outrageous

conduct, (2) intentionally or recklessly, (3) caused, (4) severe emotional distress."  *Jordan v. City*

*of Philadelphia*, 66 F. Supp. 2d 638, 642 (E.D. Pa. 1999) (citing *Kazatsky v. King David*

*Memorial Park,* 527 A.2d 988, 991 (1987)).

With the exception of the Defendants City of Allentown, the Allentown Police

Department, and the Allentown Police Chief—all claims against whom are nonviable at this time

as explained further below—the Court finds the Amended Complaint contains sufficient

allegations to state a claim for intentional infliction of emotional distress against the individual

Defendants.  Specifically, the allegations that Officer Blood, in conspiracy with Officer Diehl

and Sergeant Flores, undertook to knowingly or recklessly provide false information regarding

the number of firearms owned by Michael Morency to the prosecutor and the court, which

information was used to charge and incarcerate Michael Morency, and then used to prevent him

upon his release from residing with his family for an extended period of time, in the Court's view, satisfy the elements of the cause of action.  At this early stage of the proceedings, this claim survives Defendants' motion.

### 3.      *Section 1983 claims brought by Roeuth Morency*

Next, Defendants seek dismissal—on the same grounds as above, namely, that there is no viable underlying viable constitutional claim—of the two claims brought exclusively by Roeuth Morency:  claim nine, which purports to be a § 1983 claim against Officer Blood premised upon Roeuth Morency's "emotional distress;" and claim ten, which purports to be a § 1983 claim against the City of Allentown.  *See* Defs.' Mem. at 9.  The Court need not attempt to determine the bases for these claims; rather, it is apparent on their face they are not viable.  Section 1983 is a vehicle for alleging violations of federal constitutional and statutory rights by state actors.  *See* 42 U.S.C. § 1983.  The Amended Complaint does not specify, nor is it apparent from the allegations, that any of Roeuth Morency's rights conferred by the federal constitution or federal statutes were violated by Defendants here.   The only arguable constitutional violations occurred at the expense of Michael Morency; the only viable claim Roeuth Morency has at this point is one sounding in state law.  As a result, this claim fails as a matter of law.

### 4.      *Qualified immunity*

Finally, Defendants contend that "[e]ven assuming *arguendo* that [the] Court finds the constitutional questions to [sic] close to call, Officer Blood and Sergeant Torres [sic] are entitled to qualified immunity."  Defs.' Mem. at 10.  As to Officer Blood, Defendants assert that "[i]t was not clearly established at the time of the incident that filing charges against a person, with the approval of the District Attorney's Office and through a signed warrant by the Magisterial

District Court is constitutionally impermissible." *Id*. at 12.  Defendants effectively make the same argument as to Sergeant Flores.  *See id. at 15.*

As explained above, and contrary to Defendants' contention, there remain two viable constitutional claims at the present time:  one against Officer Blood for malicious prosecution, for Officer Blood's prosecution of Michael Morency for disorderly conduct under 18 PA. CONS. STAt. § 5503(a)(4); and a § 1983 conspiracy claim premised on the malicious prosecution, against Officer Blood, Officer Diehl, and Sergeant Flores.

As it is an affirmative defense, "qualified immunity should only be granted on a motion to dismiss when it is 'established on the face of the complaint.'"  *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 290, 291 (3d Cir. 2006)); *Batiz v. Brown*, 2013 WL 1137531, at *7 (D.N.J. Mar. 14, 2013) ("[T]he qualified immunity analysis involves a fact-intensive inquiry that is generally ill-suited for resolution at the pleadings stage." ).  Although Defendants have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure rather to dismiss under Rule 12(b)(6), the same logic applies:  at this stage of the proceedings, the Court declines to find that Officer Blood or Sergeant Flores are protected by qualified immunity, as this is not apparent on the face of Plaintiffs' Amended Complaint.[29]

---

[29]     Put simply, it is not apparent on the face of the Amended Complaint that on the date of the incident, the right to be free from prosecution based on a police officer's knowingly or recklessly false statements was not clearly established.  To the contrary, "the right at question— the right to be free from the initiation of criminal proceedings based upon officers' false statements—was clearly established at the time of the underlying events."  *Gerhart v. Energy Transfer Partners, L.P.*, No. 1:17-CV-01726, 2020 WL 1503674, at *15 (M.D. Pa. Mar. 30, 2020).  Of course, with the aid of discovery, the contours of the relevant inquiries—the first being whether the elements of a malicious prosecution claim are supported by the actual evidence—are likely to evolve.  The instant preliminary finding on qualified immunity is without prejudice to the reassertion of the defense at a later stage in the proceedings.

C.     *Sua sponte* **treatment of certain issues**

Having addressed all the bases for Defendants' motion for judgment on the pleadings, there remain several claims that the Court chooses to address *sua sponte*, as they are either duplicative of other claims, or clearly not viable.

1.     *Municipal entities & duplicative claims*

Claims five, six, eleven, and twelve, each purport to assert § 1983 claims against the City of Allentown and/or Tony Alsleben, the City's Police Chief, based upon alleged constitutional violations. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Janowski*, 259 F. Supp. 3d at 131 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Therefore, all claims brought against the City of Allentown and the Police Chief in his official capacity[30] are duplicative of one another. As a result, the Court condenses these separate claims down to a single § 1983 claim against the City of Allentown, which is addressed below.

2.     *Municipal liability*

a.     **Legal principles**

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court overruled its holding in *Monroe v. Pape* that "Congress did not undertake to bring municipal corporations within the ambit of [§ 1983]." 365 U.S. 167, 187 (1961). Since *Monell*,

---

[30]     There is no indication that Plaintiffs are attempting to sue the Police Chief in his individual capacity. Nor could they on the alleged facts, as there is no claim of the Chief's personal involvement in the alleged offenses—a well-understood necessary prerequisite for § 1983 individual liability. *See Gannaway v. Prime Care Med., Inc.*, 150 F. Supp. 3d 511, 526 (E.D. Pa. 2015) (explaining that under § 1983, "individual liability can be imposed only if the state actor played an 'affirmative part' in the alleged misconduct, either through personal direction of or actual knowledge and acquiescence in the deprivation."), *aff'd sub nom. Gannaway v. PrimeCare Med., Inc*, 652 F. App'x 91 (3d Cir. 2016).

it has been well settled that local governments can be liable as "persons" under § 1983; however, this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell*, 436 U.S. at 665-83.  This limitation is a corollary of the established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions."  *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original)).

To avoid §1983 municipal liability collapsing into vicarious liability, a § 1983 plaintiff seeking to recover against a municipality must, in the context of a Rule 12(b)(6) motion to dismiss (or Rule 12(c) motion), plead that the complained-of injury was caused directly by a local government's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Harris v. City of Philadelphia*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016) (quoting *Monell*, 436 U.S. at 694).  That is to say, a municipal policy or custom—as opposed to the independent conduct of a municipal employee—must be the "driving force" behind the alleged harm.  *Weston v. City of Philadelphia*, 82 F. Supp. 3d 637, 649 (E.D. Pa. 2015).  In this context, a municipal "[p]olicy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Does v. Se. Delco Sch. Dist.*, 272 F. Supp. 3d 656, 667 (E.D. Pa. 2017) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). A municipal custom, on the other hand, "is established 'by showing that a given course of conduct although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

constitute law.'"  *Kelty v. City of Philadelphia*, No. CV 16-0306, 2016 WL 8716437, at *3 (E.D.

Pa. June 10, 2016) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

 Courts have generally recognized four sets of circumstances the existence of which are

sufficient to establish a municipal policy or custom for purposes of § 1983 liability:  (1) a formal

policy officially promulgated or endorsed by the municipality, *see Monell*, 436 U.S. at 690; (2)

notwithstanding the absence of a formal policy, specific injury-causing actions taken by a

government official who is responsible for establishing municipal policies, *see Bd. of County

Comm'rs v. Brown*, 520 U.S. 397, 404-05 (1997); *Pembaur*, 475 U.S. at 483; (3) notwithstanding

the absence of a formal policy, a practice so consistent and widespread that, although not

expressly authorized, constitutes a custom or usage of which a policymaker must have been

aware, *see Bd. of County Comm'rs*, 520 U.S. at 403-04; *City of St. Louis v. Praprotnik*, 485 U.S.

112, 127 (1988); *Monell*, 436 U.S. at 690-91; and (4) notwithstanding the absence of a formal

policy, a widespread failure by policymakers to provide adequate training or supervision to

subordinates, *see Bd. of County Comm'rs*, 520 U.S. at 407; *City of Canton v. Harris*, 489 U.S.

378, 388 (1989).

  **b.**  **Application to the Amended Complaint**

 Turning to the viability of the consolidated § 1983 claim against the City of Allentown, it

is clear that this claim must fail.  In short, there are no allegations that plausibly support (1) that

the City of Allentown, and specifically the Police Department, had a formal policy of knowingly

or recklessly falsifying information in support of prosecutions, (2) that Police Chief Alsleben, or

any other City policymaker, took direct action which led to or caused the constitutional injury

complained of by Michael Morency, (3) that there existed a practice of police officers knowingly

or recklessly falsifying information in support of prosecutions that was so widespread as to

constitute municipal policy and of which a policymaker must have been aware, or (4) that there existed a widespread failure of policymakers to provide adequate training or supervision to police officers.

Simply put, the Amended Complaint's allegations on the issue of municipal liability are inherently conclusory, and do nothing to allege anything that extends beyond the unfortunate circumstances of Michael Morency's incident. *See, e.g.*, Am. Compl. 107-32. Moreover, while it appears that the Amended Complaint attempts to allege a "failure to train" or "failure to supervise" theory of liability, there are simply no allegations supporting such a theory. *See Connick*, 563 U.S. at 62 (acknowledging that the existence of a "pattern" of behavior is "ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train"); *Harris*, 171 F. Supp. 3d at 400 ("[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal policymaker." (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion))).

### 3.    *Remaining claims*

To the extent there exist other purported claims peppered throughout the Amended Complaint, they are either undeveloped and do not state plausible bases for viability, or are duplicative of claims asserted elsewhere. As a result, any claims other than those included in the above analysis which Plaintiffs are attempting to assert are dismissed.

### D.    **Leave to re-plead**

The Court is obliged to consider whether to grant Plaintiffs leave to re-plead some or all of their claims. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007) ("Generally, a plaintiff

will be given the opportunity to amend her complaint when there is an asserted defense of failure to state a claim."). Although leave to amend pleadings, when not as of right, should be "freely give[n] when justice so requires," FED. R. CIV. P. 15(a)(2), the denial of leave to amend is appropriate where there exists undue delay, bad faith, dilatory motive, or futility. *See Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008).

Given that Plaintiffs have not had an opportunity to amend their pleadings in a substantive way—the operative pleading was "amended" to correct the obvious mis-numbering of its counts—the Court, in its discretion, will grant Plaintiffs leave to re-plead the following claims: false arrest and false imprisonment against Officer Blood (claims two and three); malicious prosecution against Officer Blood for the two charges of simple assault (claim one); false arrest, false imprisonment, and unlawful search against Sergeant Flores (claim four); a *single* claim against the City of Allentown alleging municipal liability for constitutional violations (claims five and six), and conspiracy claims premised on re-alleged constitutional violations (claim eight). Claims nine and ten are dismissed with prejudice as futile, and claim eleven is dismissed with prejudice as duplicative of other claims.

If Plaintiffs choose to re-plead the claims discussed herein, they are directed to file a Second Amended Complaint within thirty days of this Opinion. Any Second Amended Complaint shall plead only those claims permitted to be re-pleaded herein, in addition to those claims not dismissed from the Amended Complaint. Additionally, Plaintiffs are directed to ensure the numbering of all claims is correct, and that claims are not duplicative or otherwise difficult to decipher.

## V.    CONCLUSION

For the reasons discussed above, Defendants' motion for judgment on the pleadings is granted, in part.  Specifically, claims two, three, four, five, and six are dismissed, without prejudice.  The portion of claim one premised on simple assault is also dismissed, without prejudice.  Claims nine and ten are dismissed with prejudice, as futile, and claim eleven is dismissed with prejudice, as duplicative.  Defendants' motion is denied as to the remainder of the claims.  A separate Order follows this Opinion.

BY THE COURT:


/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge