**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

MICHAEL RAYMOND MORENCY and  :
ROEUTH MORENCY, husband and wife,  :
           Plaintiffs,  :
             :
          v.  :          No. 5:19-cv-5304
             :
CITY OF ALLENTOWN, ALLENTOWN  :
POLICE DEPARTMENT, CHIEF OF  :
POLICE TONY ALSLEBEN, OFFICER  :
DIEHL, SERGEANT FLORES, and  :
OFFICER BLOOD,  :
           Defendants.  :

_____

**O P I N I O N**

**Plaintiffs' Motion for Summary Judgment, ECF No. 50—DENIED**
**Defendants' Motions for Summary Judgment, ECF Nos. 51 & 53—GRANTED**

**Joseph F. Leeson, Jr.**                              **October 2, 2020**
**United States District Judge**

## I.      INTRODUCTION

        This action was commenced by husband and wife Plaintiffs, Michael Raymond Morency[1]

and Roeuth Morency (collectively, "Plaintiffs"), against the City of Allentown, Pennsylvania

("the City"), the Allentown Police Department, and several of its police officers (collectively,

"Defendants").  Plaintiffs allege myriad civil rights violations stemming from the arrest and

prosecution of Michael Morency for simple assault and disorderly conduct, charges which were

subsequently dropped.  In previously ruling on Defendants' motion for judgment on the

pleadings, the Court permitted Plaintiffs to replead a majority of their nonviable claims.  *See*

---

[1]      Except where otherwise noted, reference to a single "Morency" is intended to refer to
Michael Morency.

ECF Nos. 30-31; *Morency v. City of Allentown*, No. 5:19-CV-5304, 2020 WL 1935640 (E.D. Pa. Apr. 22, 2020).  Plaintiffs subsequently filed a Second Amended Complaint ("SAC").  Discovery has since concluded,[2] and both Plaintiffs and Defendants have cross-filed motions for summary judgment.[3]  For the reasons set forth below, Plaintiffs' motion for summary judgment is denied, and Defendants' motions for summary judgment are granted.

## II.    BACKGROUND

### A.    The Undisputed Material Facts

 At the outset, the Court observes that Plaintiffs have failed to file either a statement of undisputed material facts or a response to Defendants' statements of undisputed material facts. They have also failed as a general matter to support their motion with facts that are supported by citations to the record.  While the Court discusses the consequences of these deficiencies in detail further below, at the moment it is necessary to note that the undisputed material facts recited here are drawn—as they must be—exclusively from the Defendants' statements of undisputed material facts.[4]

On June 14, 2018, Michael Morency was smoking a cigarette on the front porch of his home in Allentown, Pennsylvania, when he observed two boys playing soccer across from his

---

[2]      On September 31, 2020, Plaintiffs filed a belated motion to compel responses to written discovery requests.  *See* ECF No. 64.  The fact discovery deadline expired on July 31, 2020.  *See* ECF No. 44.

[3]      Plaintiffs move for summary judgment as to only seven of their twelve claims.  *See* ECF No. 50 ¶ 10.  Defendants move for summary judgment as to all of Plaintiffs' claims.  *See* ECF Nos. 52-53.  Defendant Officer Diehl has filed his own motion for summary judgment; the remainder of the Defendants move together.  *See* ECF Nos. 53 and 51, respectively.

[4]      The Court generally cites to these statements rather than the underlying record.  The Court does not recite factual assertions that are not undisputed, not material, not supported by citations to the record, or that are supported by citations to the record the substance of which does not actually provide support.  *See* FED. R. CIV. P. 56(c)(1); Leeson, J., Policies and Procedures §§ (II)(F)(7)-(8).

yard.  Defendant Officer Diehl's Statement of Undisputed Material Facts ("Diehl SOMF") [ECF No. 54] ¶ 3.  One of the boys was Plaintiffs' next-door neighbor, while the other boy, the son of Plaintiffs' neighbor Hector Sanchez, lived down the street from Plaintiffs.  *Id*. ¶¶ 4-5.  Morency observed that the soccer ball the boys were playing with repeatedly hit Plaintiffs' vehicle, which was parked on their property.  *Id*. ¶ 3.  Morency reacted to this by advising the two boys to go elsewhere and to stay off Plaintiffs' property.  *Id*. ¶ 7.  In response, the boys gave Morency "lip" and kicked the soccer ball at Plaintiffs' vehicle one final time, which caused the ball to land in a hedge in front of Plaintiffs' porch.  *Id*. ¶ 8.  Morency then jumped off his porch and went to retrieve the ball at the same time as Hector Sanchez's son.  *Id*. ¶ 9.  As a result, a collision, the exact nature of which is unclear, occurred between Morency and the boy—Hector Sanchez's son claimed Morency pushed him to the ground twice while he was retrieving the ball; Morency claims the collision was inadvertent.  *See id*. ¶¶ 10-11.  Either way, Hector Sanchez's son fell to the ground as a result.[5]  *Id*. ¶ 12.

Being significantly upset by the incident, the younger Sanchez returned home to tell his father what had happened.  Diehl SOMF ¶¶ 13-14.  Hector Sanchez then decided to confront Morency about the incident.  *Id*. ¶ 15.  He walked over to Plaintiffs' property, where Morency was still present on his porch.  *Id*. ¶ 16.  Several neighborhood children were also present in the vicinity.  *Id*. ¶ 17.  Hector Sanchez proceeded to tell Morency that he should never place his hands on someone else's child.  *Id*. ¶ 18.  Although the exact tenor of the exchange between Hector Sanchez and Morency is not clear—Morency claims Hector Sanchez was walking towards him and yelling in a threatening manner; Hector Sanchez stated he stayed on the

---

[5]       Michael Morency does not dispute that he made contact with the younger Sanchez and the boy fell to the ground as a result.  *See* Michael Morency Deposition Transcript ("Morency Dep.") [ECF No. 54-4] at 26:1-8.

sidewalk and/or Plaintiffs' small front yard—it is undisputed that during the exchange, Morency removed a firearm from his pocket in a "defensive draw," whereby he held the firearm near his waste, bladed slightly towards Sanchez.  *Id*. ¶¶ 20-27.  He then told Hector Sanchez to leave his property.  City Defendants' Statement of Undisputed Material Facts ("City SOMF") [ECF No. 52] ¶ 15.  Seeing the firearm, Hector Sanchez told Morency he did not want any problems and left the scene, taking the children that were present with him.  *Id*. ¶ 16.

Mr. Sanchez subsequently called 911 to report the incident.  Diehl SOMF ¶ 31. Allentown Police Officers Eric Blood and Matthew Diehl responded to the call.[6]  *Id*. ¶ 32.  As part of their investigation, Officers Blood and Diehl spoke with Hector Sanchez and his son about the incident.  *Id*. ¶ 33.  The Sanchezes told Blood and Diehl that Morency had pushed the younger Sanchez to the ground and then drew a firearm when Hector Sanchez attempted to confront him about it.  *Id*. ¶ 34.  Hector Sanchez was able to describe the firearm Morency displayed to him as a small silver/chrome revolver.  *Id*. ¶ 36.  Officer Diehl also observed a scrape on the younger Sanchez in connection with the incident.  *Id*. ¶ 35.

As part of the investigation, a firearm registry search was performed, which confirmed that Michael Morency had purchased a .38 caliber revolver.[7]  Diehl SOMF ¶ 37.  Also as part of the investigation, Diehl asked some of the children who were outside during the incident what type of car was driven by the man who had displayed the firearm; the children identified a black Nissan, which Diehl and Blood confirmed was registered to Michael Morency.  *See id*. ¶ 39.

---

[6]       Another officer, Officer Dewalt, also responded with Officers Blood and Diehl to Hector Sanchez's 911 call.  *See* City SOMF ¶ 10.  Officer Dewalt is not a defendant in this action.
[7]       Morency does not dispute that the firearm he drew was a "Smith & Wesson . . . 38 special revolver."  Diehl SOMF ¶ 38.

Officers Diehl and Blood also went to Plaintiffs' home to speak with Morency about the incident. Diehl SOMF ¶ 40. They asked Morency to come outside his home with his hands up, however, Morency told the officers from within his home to leave and shut and locked his door. City SOMF ¶¶ 19-20. Diehl and Blood continued their investigation by obtaining a victim statement from Hector Sanchez. *Id*. ¶ 21.

After preparing a written report concerning the day's events, Officer Blood called Assistant District Attorney ("ADA") Diane Markovits to approve criminal charges against Morency. Diehl SOMF ¶ 43. The ADA approved the filing of two counts of simple assault and one count of disorderly conduct. *Id*. ¶ 44. Blood completed an arrest warrant application and an affidavit of probable cause in support of the charges before the end of his shift on June 14, 2018. *Id*. ¶ 45. The affidavit of probable cause was presented to Magisterial District Judge Patricia M. Engler the following day, June 15, 2018. *Id*. ¶ 46. That day, Officer Blood went to court and swore out the affidavit of probable cause for the arrest warrant. *Id*. ¶¶ 30-31.

Around the same time on June 15, 2018 that Officer Blood was at the courthouse, Allentown Police Officer Sergeant Flores, who had been made known of the previous day's incident from Officer Diehl and Blood's recounting at the morning "roll call,"[8] went to Plaintiffs' residence to run surveillance. City SOMF ¶¶ 27-28, 32. During Sergeant Flores's surveillance, Morency exited his home and got into his car. *Id*. ¶ 33. Shortly thereafter, Flores conducted what he termed a "traffic stop" in anticipation of the warrant that was about to issue. *Id*. In particular, he advised Morency that he was being detained in connection with the previous day's incidents, and a warrant was about to issue for his arrest. *Id*. ¶ 34. Approximately seven

---

[8]    At the roll call, Officers Diehl and Blood "read off what happened in the previous shift." City SOMF ¶ 27. This is regular practice "[i]f an officer has a pending warrant or knows of a suspect that is wanted or a person of interest." *Id*. ¶ 28.

minutes after the initial stop, an arrest warrant issued and Morency was taken into custody.[9]  *Id.*

¶ 35.  Following Morency's arrest, Judge Engler entered an Order imposing certain bail release

conditions, including prohibiting Morency from residing at his home with his family, prohibiting

Morency from having any contact with victims or witnesses, mandating that Morency reside in a

gun free home, and prohibiting his possession of any firearms during the pendency of his case.

Diehl SOMF ¶ 51.

Although neither Officers Diehl nor Blood had any input into the bail conditions set by

Judge Engler, the Judge did request that these officers help facilitate the removal of firearms

from Plaintiffs' residence so that Morency could eventually reside at home.  Diehl SOMF ¶¶ 52-

53.  In response to this request, Officer Diehl asked the District Attorney's Office whether he and

Officer Blood could go to Plaintiffs' home to advise Roeuth Morency that any firearms needed

to be removed from the home.  *Id.* ¶ 54.  The District Attorney's Office advised Diehl that if an

adult occupant of Plaintiffs' home was present and provided consent to the officers, they could

enter the home, locate any firearms, and discuss having them removed.  *Id.* ¶ 55.

Accordingly, the same day, June 15, 2018, Officers Diehl and Blood went to Plaintiffs'

home and made contact with Roeuth Morency.  Diehl SOMF ¶ 56.  The officers advised Mrs.

Morency that they were at her home to locate her husband's firearms because, under his bail

conditions, he could not return home until any firearms had been removed.  *Id.* ¶ 57.  After the

officers asked permission, Mrs. Morency verbally consented to their entry for purpose of

locating her husband's firearms.  *Id.* ¶¶ 58-59.  She directed the officers to a firearm on the

kitchen table, and the officers located a second firearm in the basement.  *Id.* ¶¶ 59-61.  The

---

[9]     Officer Diehl was not involved in Morency's arrest beyond informing Sergeant Flores
that the arrest warrant had been signed.  Diehl SOMF ¶¶ 49-50.

officers informed Mrs. Morency that the firearms needed to be removed from the home, and subsequently left. *Id*. ¶¶ 62-63. Officers Diehl and Blood deny taking any items from Plaintiffs' home, and Mrs. Morency does not recall seeing the officers take anything from the home.[10] *Id*. ¶¶ 65-66. After the officers left, Mrs. Morency had the firearms removed from the home and placed in a safety deposit box. *Id*. ¶ 71.

On July 3, 2018, Michael Morency's defense attorney sought to strike the bail condition preventing him from residing at his home. Diehl SOMF ¶ 72. A revised bail Order which removed the restriction on where Morency could reside was subsequently issued. *Id*. ¶ 73. At a preliminary hearing on July 26, 2018, the court dismissed the charges against Morency. *Id*. ¶ 74.

## B.    Procedural Background

Plaintiffs commenced this action on November 12, 2019 with the filing of the initial Complaint. *See* ECF No. 1. Defendants filed an Answer to the Complaint on January 24, 2020, *see* ECF No. 11, before moving for partial judgment on the pleadings on March 4, 2020, *see* ECF No. 14. On March 16, 2020, at the direction of the Court, Plaintiffs filed an Amended Complaint to correct the mis-numbering of some the Complaint's counts; there were no substantive amendments at this time. *See* ECF No. 19. On March 22, 2020, the Court issued an Opinion and Order granting in part Defendants' motion for judgment on the pleadings and granting Plaintiffs leave to replead many of their claims. *See* ECF Nos. 30-31. Plaintiffs filed a Second Amended Complaint on May 22, 2020, which remains the operative pleading. *See* ECF No. 38. After being granted an extension of deadlines, discovery closed on July 31, 2020. *See* ECF No. 44.

---

[10]    Plaintiffs allege that during the search of their home on June 15, 2018, two handguns were taken, as was $2,000 in cash from a safe, two handgun magazines, and handgun ammunition. *See* SAC [ECF No. 38] ¶ 67.

The parties filed their cross-motions for summary judgment on or about August 7, 2020.[11]  *See* ECF Nos. 50-55.

## III.   LEGAL STANDARD

### A.   The Substantive Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party bears the initial burden of establishing that no genuine issue of material fact exists.  *Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 412-13 (D.N.J. 2018).  In determining if the moving party has satisfied this burden, the Court is obliged to construe all facts and factual inferences in the light most favorable to the non-moving party.  *See United States ex rel. Simpson v. Bayer Corp.*, 376 F. Supp. 3d 392, 401 (D.N.J. 2019); *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Bacon*, 357 F. Supp. 3d at 413 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Where the movant shows a *prima facie* entitlement to summary judgment, the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact.  *See* FED. R. CIV. P. 56(e); *Davis v. Quaker Valley Sch. Dist.*, No. 13-1329, 2016 WL 912297, at *8 (W.D. Pa. Mar. 10, 2016), *aff'd*, 693 F. App'x 131 (3d Cir. 2017).  "[T]he non-moving party

---

[11]     Officer Diehl has filed his own motion for summary judgment; the remainder of the Defendants move for summary judgment together.  *See* ECF Nos. 53 and 51, respectively.

may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Gibson-Reid v. Lendmark Fin. Servs., LLC*, No. 2:19-CV-02859, 2019 WL 4139034, at *1 (E.D. Pa. Aug. 30, 2019) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)); *see Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").  Summary judgment is mandated where a non-moving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . [T]here can be 'no genuine issue of material fact'" where "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).[12]

### B.   Required Summary Judgment Filings

To assist the Court in determining whether a party is entitled to judgment based on the material, undisputed facts, Federal Rule of Civil Procedure 56 provides specific directives as to how purportedly undisputed (or disputed) facts must be presented in a summary judgment motion.  Specifically, Rule 56(c) states as follows:

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[12]     This "standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). Where parties cross move, the Court "must consider the motions independently, in accordance with the principles outlined above." *Bacon*, 357 F. Supp. 3d at 413.

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

\* \* \*

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

Rule 56(e) further provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."

To further effectuate the purpose of Rule 56, this Court's Policies and Procedures provide the following instructions:

<u>Motions for Summary Judgment - Required Statement of Undisputed Material Facts</u> Any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure must be accompanied by a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. The moving party shall include only those facts that are material to the issues in dispute in the enumerated statement of facts. The moving party shall accompany each factual assertion with a citation to the specific portion(s) of the record that support the assertion, including the exhibit, page, and line numbers. When a factual assertion cites to a deposition transcript, counsel shall attach a copy of the entire transcript containing the cited testimony to the motion. The Court will not consider a factual assertion that is not supported by a citation to the record.

<u>Responses to Motions for Summary Judgment - Required Answer to Moving Party's Statement of Undisputed Facts</u> A party opposing a motion for summary judgment shall file a separate, short, and concise statement responding to the numbered paragraphs set forth in the moving party's statement of undisputed facts and shall either concede the facts as undisputed or state that a genuine dispute exists. If the opposing party asserts a genuine dispute exists as to any fact, the party shall cite to the specific portion(s) of the record that create the dispute, including the exhibit, page, and line number. The opposing party shall also set forth in enumerated paragraphs any additional material facts that the party contends preclude summary judgment. When a factual assertion cites to a deposition transcript, counsel shall attach a copy of the entire transcript containing the cited

text. All facts set forth in the moving party's statement of undisputed facts shall be deemed admitted unless controverted.

Leeson, J., Policies and Procedures §§ (II)(F)(8)-(9). These directives are also contained in the Court's Rule 16 Scheduling Order.  *See* ECF No. 17 at 2-3.

## IV.   DISCUSSION

### A.   The Consequences of the Deficiencies in Plaintiffs' Summary Judgment Filings

As the Court noted at the outset of this Opinion, Plaintiffs have not filed either a statement of undisputed material facts or a response to the Defendants' statements of undisputed material facts.  Moreover, Plaintiffs' motion and their opposition to Defendants' motions generally fail to cite to the underlying record.  Although Plaintiffs' "motion," docketed at ECF No. 50, appears to contain a numbered-list of purported facts, these facts only recount the case's procedural history with citations to the docket, rather than the substantive facts that are material to Plaintiffs' claims and supported by citations to the record.  Additionally, while Plaintiffs have filed documents titled "Answer[s]" to Defendants' motions for summary judgment, which are docketed at ECF Nos. 57 and 58, these filings list only general denials of both factual and legal assertions of Defendants.  These denials in no way correspond to the factual assertions in Defendants' statements of undisputed material facts and do not contain citations to the factual record.[13]

---

[13]     It is unclear to the Court what the purpose of these filings are.  Indeed, much of their content is dedicated to legal argument, which would not be appropriate in a proper response to a moving party's statement of undisputed material facts, or in a statement of undisputed material facts itself.  *See Reichard v. United of Omaha Life Ins. Co*., 331 F. Supp. 3d 435, 442 n.1 (E.D. Pa. 2018) (explaining that parties should "refrain from legal arguments in their statements of undisputed material facts," and, "[i]n addition, responses to a party's statements of undisputed material facts should not contain legal arguments"), *aff'd*, 805 F. App'x 111 (3d Cir. 2020).

The deficiencies in Plaintiffs' summary judgment filings directly contravene the directives of Rule 56, this Court's Policies and Procedures, and the Court's Rule 16 Scheduling Order, as outlined above.  Therefore, in the absence of "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," as well as "a separate, short, and concise statement responding to the numbered paragraphs set forth in the [Defendants'] statement[s] of undisputed facts," the Court must limit its consideration of material facts to those put forward by Defendants.  The Court deems those facts uncontested where they are supported by citations to admissible record evidence.[14]  Leeson, J., Policies and Procedures §§ (II)(F)(8)-(9) ("The Court will not consider a factual assertion that is not supported by a citation to the record. . . . All facts set forth in the moving party's statement of undisputed facts shall be deemed admitted unless controverted."); *see* FED. R. CIV. P. 56(c)(3) (providing that "[t]he Court need consider only the cited materials"); FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."); *see also O'Connell v. Associated Wholesalers, Inc.*, 558 F. App'x 286, 291 (3d Cir. 2014) (finding as follows where the District Court adopted

---

[14]     While this result may seem harsh, it is important to understand that the required statements of undisputed material facts and responses thereto

> are not merely superfluous abstracts of the evidence. Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

*Landmesser v. Hazleton Area Sch. Dist.*, 982 F. Supp. 2d 408, 412 (M.D. Pa. 2013) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994)), *aff'd*, 574 F. App'x 188 (3d Cir. 2014).

the moving party's statement of undisputed facts in the absence of a responsive statement: "[t]he requirement to file a separate statement responsive to [movant's] statement of undisputed facts was consistent with Federal Rule of Civil Procedure 56(c) . . . . Moreover, the requirement for [non-movant] to file a separate statement of undisputed facts—and the consequences for not doing so—were explicitly set forth in the Court's Rule 16 status conference order . . . . As this constituted actual notice, the District Court acted pursuant to Rule 83(b) and within its discretion to secure the just and prompt disposition of cases"). [15]

### B.      Plaintiffs' Claims

Plaintiffs' Second Amended Complaint asserts the following twelve causes of action:  (1) malicious prosecution, by Michael Morency against Officer Blood; (2) false arrest, by Michael Morency against Officer Blood; (3) false imprisonment, by Michael Morency against Officer Blood; (4) false arrest, by Michael Morency against Sergeant Flores; (5) false imprisonment, by Michael Morency against Sergeant Flores; (6) unlawful search, by Michael Morency against Sergeant Flores; (7) all previously pleaded constitutional claims, by Michael Morency against the Police Chief in his Official Capacity; (8) all previously pleaded constitutional claims, by Michael Morency against the City of Allentown; (9) loss of consortium, by Michael Morency[16] against the City of Allentown and Officer Blood; (10) conspiracy to violate constitutional rights, by Michael Morency against all individual Defendants; (11) intentional infliction of emotional

---

[15]      Federal Rule of Civil Procedure 83(b) provides, in relevant part, that "[n]o sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."  The several directives regarding the requirement to file statements of undisputed material facts and responses thereto—in Rule 56, the Court's Policies and Procedures, and the Court's Rule 16 Scheduling Order—constitute more than adequate notice under Rule 83(b).

[16]      Although the heading of this claim states it is being brought by Michael Morency, it appears to actually be brought by Roeuth Morency.

distress, by both Plaintiffs against all Defendants; and (12) unlawful search, by both Plaintiffs against unnamed police officers.  The Court addresses whether any party is entitled to summary judgment on these claims in light of the undisputed material facts as put forward by Defendants.

### 1.   False arrest, false imprisonment, malicious prosecution

#### a.   Legal principles

To succeed on a claim for false arrest under 42 U.S.C. § 1983,[17] for violation of one's right to be free from unreasonable seizure under the Fourth Amendment, a plaintiff must establish that (1) he was arrested, and (2) the arrest was made without probable cause.  *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).  Similarly, to succeed on a claim for false imprisonment, a plaintiff must establish that (1) he was imprisoned, and (2) his imprisonment was unlawful.  *Glaspie v. Cty. of Gloucester*, No. CV 15-7691, 2018 WL 4179461, at *4 (D.N.J. Aug. 31, 2018).  "[W]here the police lack probable cause to make an

---

[17]     Title 42 U.S.C. § 1983 is a mechanism for the redress of deprivations of substantive constitutional and statutory rights by individuals acting under the authority of state law.  The statute provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Importantly, § 1983 "is not itself a source of substantive rights;" rather, the statute is a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (explaining that Section 1983 "is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws'" (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4-6 (1980))); *see Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 422 (3d Cir. 2004) ("Once the plaintiff establishes the existence of a federal right, there arises a rebuttable presumption that the right is enforceable through the remedy of § 1983.").

arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention

pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). "Thus,

a claim of false imprisonment in this context is derivative of a claim for arrest without probable

cause." *Wynder v. Womack*, No. CV 17-13239, 2018 WL 4846677, at *4 (D.N.J. Oct. 5, 2018).

A claim for malicious prosecution is a slightly different type of claim. "[U]nlike the

related cause of action for false arrest or imprisonment," malicious prosecution "permits

damages for confinement imposed pursuant to legal process." *Heck v. Humphrey*, 512 U.S. 477,

484 (1994). To succeed on a claim for malicious prosecution, a plaintiff must establish that (1)

the defendants initiated a criminal proceeding, (2) the proceeding ended in the plaintiff's favor,

(3) the proceeding was initiated without probable cause, (4) the defendants acted maliciously or

for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered a

deprivation of liberty consistent with the concept of seizure as a consequence of a legal

proceeding.[18] *Glaspie*, 2018 WL 4179461, at *5; *see McKenna v. City of Phila.*, 582 F.3d 447,

461 (3d Cir. 2009)). "Police officers (as opposed to prosecutors) may be liable for malicious

---

[18]     As the Court noted in its Opinion on Defendants' motion for judgment on the pleadings,
there is a lively discussion in the current case law regarding the extent to which plaintiffs can
assert § 1983 claims of malicious prosecution for alleged violations of rights other than those
conferred by the Fourth Amendment, such as, for example, malicious prosecution for alleged
violations of Fourteenth Amendment procedural due process rights. *See, e.g., Lewis v. City of
Philadelphia*, No. CV 19-2847, 2020 WL 1683451, at *5 (E.D. Pa. Apr. 6, 2020) ("Defendants
seek dismissal of the malicious claim to the extent it relies on the Fourteenth Amendment,
arguing that malicious prosecution claims that sound in the Fourteenth Amendment are barred as
a matter of law . . . . The Court disagrees with Defendants' position that [the] Fourteenth
Amendment malicious prosecution claim is categorically unavailable. However, [ ] the legal
landscape on this question is complicated and uncertain . . . ."); *Thomas v. City of Philadelphia*,
290 F. Supp. 3d 371, 380 (E.D. Pa. 2018) (observing that "case law in this Circuit may be
described as inconsistent" on the issue).
        The Court assumes Michael Morency grounds his malicious prosecution claim on alleged
violations of his Fourth Amendment rights. *See* SAC ¶ 105; *see also Albright v. Oliver*, 510 U.S.
266, 271 (1994) ("We hold that it is the Fourth Amendment, and not substantive due process,
under which petitioner Albright's claim [for malicious prosecution] must be judged.").

prosecution if they 'conceal or misrepresent material facts' to the prosecutor." *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)). "In particular, an officer is liable if he 'fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'" *Thomas*, 290 F. Supp. at 379 (quoting *Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017)).

The element common to all three causes of action is the absence of probable cause. "Probable cause exists 'when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Finnemen*, 267 F. Supp. 3d at 646 (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). The probable cause inquiry is "entirely objective." *Halsey*, 750 F.3d at  299; *see Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 123 (D.N.J. 2017) ("In determining whether probable cause existed at the time of the arrest, the arresting officer's state of mind (except for the facts that he knows) . . . [is] irrelevant." (quotations omitted)). While "a defendant is insulated from false arrest liability so long as '[p]robable cause . . .exist[ed] as to any offense that could be charged under the circumstances,'" *Akins v. City of Erie Police Dep't*, No. 18-395, 2020 WL 838564, at *4 (W.D. Pa. Feb. 20, 2020) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)), a "cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which . . . is likely to have placed an additional burden on the plaintiff," *Lopez v. CSX Transp., Inc.*, No. CIV.A.

06-1802, 2007 WL 2212858, at *5 (D.N.J. July 31, 2007) (quoting *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007)).

### b.      Application to the undisputed material facts

#### i.      Count Two of the SAC

The Court begins with Count Two of the Second Amended Complaint:  false arrest against Officer Blood.  For the reasons discussed below, Officer Blood is entitled to summary judgment on this claim based upon the undisputed material facts.

Michael Morency was charged with (1) Simple Assault under 18 PA. CONS. STAT. § 2701(a)(1); (2) Simple Assault under 18 PA. CONS. STAT. § 2701(a)(3); and (3) Disorderly Conduct under 18 PA. CONS. STAT. § 5503(a)(4).  *See* City SOMF ¶ 44.  A person is guilty of Simple Assault under 18 PA. CONS. STAT. § 2701(a)(1) if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;" a person is guilty of Simple Assault under 18 PA. CONS. STAT. § 2701(a)(3) if he "attempts by physical menace to put another in fear of imminent serious bodily injury;" and a person is guilty of Disorderly Conduct under 18 PA. CONS. STAT. § 5503(a)(4) if, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

Based upon his investigation with Officer Diehl, there can be no dispute that Officer Blood had probable cause to believe that Morency had committed each of the charged offenses.[19] In particular, Hector Sanchez and his son told Officers Blood and Diehl that Morency had

---

[19]      Although Officer Blood did not effectuate the actual arrest, "a police officer can be liable for a false arrest that occurs outside of his presence if he had reason to know that such a false arrest was likely to occur."  *Cooper v. City of Chester*, No. CIV.A. 11-5381, 2013 WL 925067, at *3 (E.D. Pa. Mar. 11, 2013) (quotation marks omitted).

pushed the younger Sanchez to the ground and then drew a firearm when Hector Sanchez attempted to confront him about it.[20]  Diehl SOMF ¶ 34.  Officer Diehl observed a scrape on the younger Sanchez in connection with having fallen to the ground.  Diehl SOMF ¶ 35.  With respect to the confrontation between Morency and Hector Sanchez, Mr. Sanchez was able to describe the firearm Morency displayed to him as a small silver/chrome revolver.  *Id.* ¶ 36.  When a firearm registry search was performed, it confirmed that Michael Morency had purchased a .38 caliber revolver.[21]  *Id.* ¶¶ 27, 37-38.  Significantly, Hector Sanchez informed Diehl and Blood that there were neighborhood children present during the exchange that led to Morency's draw of the firearm.  *See id.* ¶ 17.  As part of their investigation, Diehl asked some of these children what type of car was driven by the man who had displayed the firearm; the children identified a black Nissan, which Diehl and Blood confirmed was registered to Michael Morency.  *See id.* ¶ 39.  Finally, because when they tried to talk to him, Morency told the officers to leave and then shut and locked his door, Blood and Diehl were not able to get Morency's side of the story to negate any of the above allegations.  City SOMF ¶¶ 19-20.

Based upon the information available to Officer Blood as recited above, no reasonable jury could conclude that he lacked probable cause to believe that Michael Morency had committed each charged offense—that is, that Morency "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another," 18 PA. CONS. STAT. § 2701(a)(1);[22]

---

[20]    Morency does not dispute that however the collision between himself and Hector Sanchez's son is characterized, the boy fell to the ground as a result.  *See* Morency Dep. at 26:1-8.

[21]    Nor does Morency dispute that he made a "defensive draw" of a firearm on Hector Sanchez, and that firearm was a "Smith & Wesson . . . 38 special revolver."  Morency Dep. at 44:3-4, 116:5-6.

[22]    As the Court observed in its Opinion on Defendants' motion for judgment on the pleadings, § 2701 was derived from Section 211.1 of the Model Penal Code.  The committee notes accompanying Section 211.1 of the MPC state as follows:  "This section eliminates the

that he "attempt[ed] by physical menace to put another in fear of imminent serious bodily

injury," 18 PA. CONS. STAT. § 2701(a)(3);[23] and that, "with intent to cause public inconvenience,

annoyance or alarm, or recklessly creating a risk thereof, he . . . create[d] a hazardous or

physically offensive condition by any act which serve[d] no legitimate purpose of the actor," 18

PA. CONS. STAT. § 5503(a)(4).[24]  *See Roberts v. Williams*, No. CV 15-6629, 2018 WL 6839804,

---

common law distinctions between assault, battery and mayhem and classifies the crimes on the basis of the seriousness of the harm done, intended or risked."  Consistent with § 2701's elimination of the distinction between "assault" and "battery," it follows that minimal contact is sufficient to satisfy the *actus reus* component of simple assault.  *See Com. v. Gregory*, 132 Pa. Super. 507, 512, 1 A.2d 501, 503 (1938) ("The least touching of another's person willfully, or in anger, is a battery. . . . [T]he touching of, or injury to, another must be done in an angry, revengeful, rude or insolent manner so as to render the act unlawful" (quotations and citations omitted)); *Com. v. Shamsud-Din*, 2010 Pa. Super. 995 A.2d 1224, 1230 (2010) (affirming conviction for simple assault where the defendant and another "were like tussling").  With respect to the required *mens rea*, a "Pennsylvania simple assault violation requires a minimum *mens rea* of recklessness rather than intent."  *United States v. Otero*, 502 F.3d 331, 335 (3d Cir. 2007).  The undisputed facts here support both the minimum *actus reus* element—bodily injury (minimal contact)—as well as the minimum *mens rea* element—recklessness, under § 2701(a)(1).

23      *See Fitzgerald v. Cty. of Lehigh*, 381 F. Supp. 3d 443, 457 (E.D. Pa. 2019) ("One is not required to 'point or shoot a firearm in order to be found guilty of simple assault by physical menace.'" (quoting *Commonwealth v. Olsen*, No. 1861 WDA 2016, 2017 WL 6523267, at *4 (Pa. Super. Dec. 21, 2017))).

24      The Court recognizes that on Defendants' motion for judgment on the pleadings, Plaintiffs' allegations were sufficient to support that probable cause was lacking to arrest Morency for this offense.  This conclusion was based on the allegation—which was accepted as true—that the altercation between Morency and Hector Sanchez occurred exclusively on Plaintiffs' property.  There was therefore an insufficiently "public" aspect of the altercation to support probable cause.  However, on the undisputed factual record now before the Court, it is clear that Officer Blood was informed there were multiple people in the vicinity of the altercation, which was visible and audible to the neighborhood.  Therefore, whether Hector Sanchez was on the sidewalk or on Plaintiffs' property, Morency's drawing of his firearm was a reckless act and created a sufficient risk of public alarm to support the existence of probable cause.  *See Commonwealth v. Kirchner*, No. 1873 MDA 2018, 2019 WL 4027512, at *2-*3 (Pa. Super. Ct. Aug. 27, 2019) ("We conclude that there was sufficient evidence that Kirchner's act of mimicking his shooting Klingseisen created a hazardous condition as it risked an altercation. . . . Here . . . two other persons—Natore and Rodriguez—witnessed Kirchner make his hand gesture to Klingseisen."); *O'Rourke v. Krapf*, No. 01-CV-3065, 2002 WL 32348933, at *7 (E.D. Pa. Sept. 20, 2002) (finding probable cause to arrest for disorderly conduct existed where an individual helped create the conditions that lead to a physical altercation); *compare Clifton v.*

at *4 (E.D. Pa. Dec. 31, 2018) ("Probable cause exists where a prudent officer would believe, based on the facts and circumstances at hand, that a suspect had committed or was committing an offense."); *see also Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) ("The district court may conclude in the appropriate case . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding.").  It follows that Officer Blood's swearing out of the probable cause affidavit and his application for Morency's arrest warrant cannot, on the undisputed factual record, support liability for a claim of false arrest on any of the charged offenses.[25]  Officer Blood is entitled to summary judgment on this claim.

Having determined that Officer Blood possessed probable cause to swear out an affidavit of probable cause and pursue an arrest warrant for the charged offenses and he therefore cannot

---

*Borough of Eddystone*, 824 F. Supp. 2d 617, 625 (E.D. Pa. 2011) ("[T]he Court cannot find, as a matter of law, that Ms. Clifton created a hazardous condition. Whispering vulgarities while walking alone on a walkway, while Officer Pretti sat in his car, does not create a danger or risk of injury from public disorder.").

[25]      Nor is there any evidence that Officer Blood falsified or omitted any facts from the affidavit of probable cause that were material to the probable cause determination.  *See Newsome v. City of Newark*, 279 F. Supp. 3d 515, 523-24 (D.N.J. 2017) ("An officer can be sued for false arrest even if the officer arrested the person pursuant to a warrant. In such cases, the plaintiff must show that (1) the officer recklessly or deliberately made false statements or omissions in applying for a warrant, and (2) those assertions or omissions were material or necessary to the finding of probable cause." (internal citations and quotations omitted)).

Additionally, to the extent Morency argues that Officer Blood failed to sufficiently investigate the underlying circumstances before applying for an arrest warrant, "[a] police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest, and has no general duty to investigate further after acquiring information sufficient to establish probable cause."  *Craig v. Collins*, No. CIV.A. 13-1873, 2013 WL 5271521, at *7 (E.D. Pa. Sept. 17, 2013) (quotations and citations omitted); *see Waters v. Cheltenham Twp.*, 700 F. App'x 149, 153 (3d Cir. 2017) ("When an officer has received his information from some person—normally the putative victim or an eye witness[sic]—who it seems reasonable to believe is telling the truth, he has probable cause." (quoting *Sharrar v. Felsing*, 128 F.3d 810, 818-19 (3d Cir. 1997))).  It moreover cannot be disputed that Morency himself foreclosed the possibility of obtaining both sides of the story when he declined to speak with Blood and Diehl at the time of the incident.

be liable for a claim of false arrest, the Court can dispense with Morency's other false arrest, false imprisonment, and malicious prosecution claims as they appear in Counts One, Three, Four, and Five of the SAC.  These Counts plead claims of malicious prosecution against Officer Blood, false imprisonment against Officer Blood, false arrest against Sergeant Flores, and false imprisonment against Sergeant Flores, respectively.

### ii.   Counts One and Three of the SAC

Officer Blood is entitled to summary judgment as to Counts One and Three of the Second Amended Complaint:  malicious prosecution and false imprisonment, respectively.  The presence of probable cause required to support the arrest warrant defeats any claims for which a necessary element is the absence of probable cause to arrest—*i.e*., malicious prosecution and false imprisonment. [26]  *See Glaspie v. Cty. of Gloucester*, No. CV 15-7691, 2018 WL 4179461, at *4 (D.N.J. Aug. 31, 2018) ("[The] tort of malicious prosecution . . . remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." (quoting *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007))); *Wynder v. Womack*, No. CV 17-13239, 2018 WL 4846677, at *4 (D.N.J. Oct. 5, 2018) (explaining that "a claim of false imprisonment . . . is derivative of a claim for arrest without probable cause").  Officer Blood is therefore entitled to summary judgment on these claims.

### iii.   Counts Four and Five of the SAC

Morency is also unable to succeed on the claims contained in Counts Four and Five of the Second Amended Complaint:  false arrest and false imprisonment against Sergeant Flores.  The

---

[26]     Although the SAC pleads that one basis for Morency's false imprisonment claim against Blood is that Blood directed other officers to detain Morency knowing that a warrant had not issued, *see* SAC ¶ 121, the Court finds no support for this in the record.

basis for these claims is the allegation that Flores detained Morency prior to an arrest warrant

having issued.  *See* SAC ¶ 130.  On this issue, Defendants argue as follows:

> [K]nowing that the arrest warrant was being sealed, Sergeant Flores conducted a brief – less than seven (7) minute detention – of [Morency] to ascertain if he was in fact the Michael Morency involved in the incident the day before. Upon learning that he was, [Morency] was detained until the warrant was sealed. Therefore, the brief investigatory stop of [Morency] to determine if he had been engaged in the criminal activity from the day before was reasonable under Fourth Amendment standards.

ECF No. 51 at 12.  Defendants also argue that Sergeant Flores was not the arresting officer, and

therefore cannot be liable for false arrest.  *See id.*

Putting aside the issue of Sergeant Flores's status as a non-arresting officer for purposes

of false arrest liability, *see Cooper*, 2013 WL 925067, at *3 ("[A] police officer can be liable for

a false arrest that occurs outside of his presence if he had reason to know that such a false

arrest was likely to occur."), the Court is satisfied that there can be no dispute that Flores did not

violate Morency's Fourth Amendment rights by detaining him prior to an arrest warrant

issuing—whether for a mere investigatory stop or a true custodial arrest.  The Court reaches this

conclusion on the following reasoning.

"The Pennsylvania legislature has specifically limited the authority of police officers to

make warrantless arrests for misdemeanor offenses [in Pennsylvania Rule of Criminal Procedure

502]."[27]  *United States v. Myers,* 308 F.3d 251, 256 (3d Cir. 2002).  However, "[i]n *United States*

*v. Laville,* 480 F.3d 187 (3d Cir. 2007), our Court of Appeals made clear that in evaluating

whether one's Fourth Amendment right[s] were violated, the 'test is one of federal law.'"

*Noviho v. Lancaster Cty. Pennsylvania*, No. CV 15-3151, 2016 WL 8716672, at *3 (E.D. Pa.

---

[27]     The offenses with which Morency was charged are either misdemeanor or summary offenses.

June 3, 2016), *aff'd sub nom. Noviho v. Lancaster Cty. of Pennsylvania*, 683 F. App'x 160 (3d

Cir. 2017).  "Following *Laville*, courts in this Circuit have recognized that the probable cause

required to extinguish a false arrest claim under the Fourth Amendment is a separate inquiry

from the procedures an individual state authorizes by statute." *Huff v. Cheltenham Twp*., No. 14-

5555, 2015 WL 4041963 (E.D. Pa. July 1, 2015) (citing *Levine v. Rodden*, No. 15-cv-574, 2015

WL 2151781, at *5 (E.D. Pa. May 7, 2015) ("[W]hile Pennsylvania Rule of Criminal Procedure

502 prohibits warrantless arrests for misdemeanors committed outside the presence of the

arresting officer, Rule 502 alone does not automatically imply a similar prohibition in the United

States Constitution that could become the basis for a Section 1983 claim.")).

The operative question then for the constitutional inquiry is not whether a warrant had

issued to authorize Morency's detainment by Sergeant Flores, but whether an officer in Flores's

position would have had the requisite information under the circumstances to justify the

detainment—probable cause, for an arrest, or "reasonable suspicion," for a mere investigatory

stop. *See United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008) ("[A]n officer may,

consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a

reasonable, articulable suspicion that criminal activity is afoot.").  On the undisputed material

facts, no reasonable factfinder could conclude that Sergeant Flores did not have either reasonable

suspicion to conduct the initial investigatory stop of Morency, or probable cause to effect

Morency's arrest, even without a warrant.

The Court begins by looking at what an officer in Sergeant Flores's position would have

known before detaining Morency on June 15, 2018, regarding Morency's involvement in the

previous day's events.  According to the undisputed facts, at the June 15, 2018 morning "roll

call," Flores was made aware of the previous day's incident, which is regular practice when a

warrant is pending.  *See* City SOMF ¶¶ 27-28, 32.  Digging deeper into the record, Flores

testified at his deposition that he was aware of "a disturbance that included a firearm and a

younger juvenile," and that Officers Blood and Diehl had gone to court to get a warrant for

Morency's arrest.  Flores Deposition Transcript ("Flores Dep.") [ECF No. 52-2] at 12:4-5, 13-16.

Flores moreover testified that when he went to observe Plaintiffs' property, he "was aware of the

address, the car, and . . . the descriptors of Mr. Morency."  *Id*. at 12:20-22.  Flores's pre-

detainment knowledge of Morency's involvement in the previous day's incidents is consistent

with the information a reasonable officer in his position would have received from his

colleagues. [28]  Finally, during the investigatory stop—which lasted roughly seven-minutes and

during which Morency "was outside of his car" and "standing around talking" with Flores, *id*. at

14:22-23—Morency told Flores about the previous day's incidents, *see id.* at 13:10-16.

From these facts, it cannot be disputed that (1) Flores had the "reasonable suspicion"

necessary to conduct the initial investigatory stop, and (2) with the additional information he

learned during this stop from Morency (and likely even without it), Flores had probable cause to

arrest Morency without a warrant—even though the facts indicate the warrant issued prior to

Morency's arrest.  *See* City SOMF ¶ 35.  This precludes a finding that Sergeant Flores violated

Morency's Fourth Amendment rights, notwithstanding any error of state law that may have been

---

[28]     The fact that Flores did not have first-hand knowledge himself and rather learned this
information from his colleagues who had first-hand knowledge does not defeat a finding of
reasonable suspicion or probable cause.  *See Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997)
("The legality of a seizure based solely on statements issued by fellow officers depends on
whether the officers who *issued* the statements possessed the requisite basis to seize the suspect.
. . . [A]n officer can lawfully act solely on the basis of statements issued by fellow officers if the
officers issuing the statements possessed the facts and circumstances necessary to support a
finding of the requisite basis." (emphasis in original) (citing *United States v. Hensley*, 469 U.S.
221, 232 (1985))).  Morency's argument that he "was detained and held prior to an arrest warrant
being issued by an officer who had no firsthand knowledge of any wrongdoing" therefore misses
the mark.  ECF No. 50-2 at 5.

committed under Pennsylvania Rule of Criminal Procedure 502. Flores is therefore entitled to summary judgment as to both Counts Four and Five of the SAC.

### iv. Qualified immunity as to Counts One through Five of the SAC

Finally, even if the undisputed factual record was unable to support a grant of summary judgment for Officer Blood and Sergeant Flores on the basis that they had probable cause to arrest Morency, the record supports their entitlement to qualified immunity as to Counts One through Five.

"Police officers, embodying the authority of the state, are liable under [42 U.S.C.] § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). "In the familiar qualified immunity analysis, the court asks '(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful.'" *El v. City of Pittsburgh*, No. 18-2856, 2020 WL 5541155, at *3 (3d Cir. Sept. 16, 2020) (alteration in original) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011)). The Third Circuit has explained that "a police officer who relies in good faith on a prosecutor's legal opinion that [an] arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010). However, "[t]hat reliance must itself be objectively reasonable . . . because 'a wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one.'" *Id.* at 256 (quoting *Cox v. Hainey*, 391 F.3d 25, 34 (1st Cir. 2004)).

Here, it is undisputed that Officer Blood sought the counsel of ADA Markovits to determine whether and for what charges probable cause existed based upon the events of June

14, 2018.  *See* Diehl SOMF ¶ 43.  The ADA then approved the filing of three charges against

Morency based on Officer Blood and Diehl's investigation.  *See id.* ¶ 44.  There can be no

dispute that the officers' reliance on the guidance of the ADA was objectively reasonable under

the facts in this case.  *See Leary v. Cook*, No. CV 18-4347, 2020 WL 2404892, at *10 (E.D. Pa.

May 12, 2020) (explaining that factors to be considered in determining whether reliance was

reasonable includes "the crimes at issue, the completeness and correctness of the information

provided to the attorney, whether the police knew the information provided to the attorney was

questionable, the attorney's neutrality, whether reliance on the advice of counsel was pretextual,

and the timing of the probable cause determination."); *see also Berry v. Kabacinski*, No. 15-169,

2016 WL 3683158, at *11-12 (M.D. Pa. July 12, 2016) (recognizing qualified immunity where a

trooper sought advice from prosecutor, informed prosecutor what he had learned from his

investigation, and relied in good faith on the advice of the prosecutor about the charges that

should be filed); *compare Schmitt v. Farruggio*, No. 13-2007, 2014 WL 4055835, at *6 (E.D. Pa.

Aug. 13, 2014) (finding no qualified immunity where the police did not have to make split-

second judgments and withheld information from the prosecutor, and where their reliance on the

prosecutor's advice was questionable).

As a result, Officer Blood and Sergeant Flores are entitled to qualified immunity from

Morency's Fourth Amendment claims arising out of an alleged lack of probable cause.[29]

---

[29]    What is more, Sergeant Flores is entitled to qualified immunity stemming from his
conduct during his "traffic stop" of Morency.  Even if the Court determined that the record did
not support a finding that Morency's Fourth Amendment rights were *not* violated by his pre-
warrant detainment—that is, if there was a question as to the first step of the qualified immunity
analysis—there is no support for the conclusion that a seven-minute investigative stop under the
circumstances of this case constitutes a violation of a "clearly established" Fourth Amendment
right of which a reasonable police officer would have been aware.

## 2. *Unlawful search*

Although it is less than clear, the Court assumes the Second Amended Complaint intends to assert Fourth Amendment unlawful search claims based on two events: a search of Morency's person at the time he was detained by Sergeant Flores (Count Six), and the search of Plaintiffs' home for firearms (Count Twelve). In light of the undisputed factual record, Defendants are entitled to summary judgment as to both claims.

### a. Legal principles

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable and seizures."[30] As to this constitutional provision, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313 (1972). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)); *Klein v. Madison*, 374 F. Supp. 3d 389, 411 (E.D. Pa. 2019) ("When a search occurs without a warrant, it is 'presumptively unreasonable under the Fourth Amendment.'" (quoting *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996))).

---

[30] The Fourth Amendment to the Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

However, "[i]t is well-established that the Fourth Amendment's prohibition against warrantless searches does not apply 'to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises.'" *Zimmer v. New Jersey Div. of Child Prot. & Permanency*, No. CV 15-2524, 2017 WL 4838843, at *5 (D.N.J. Oct. 26, 2017) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)), *aff'd*, 741 F. App'x 875 (3d Cir. 2018). "The Supreme Court has 'long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.'" *Zimmer*, 2017 WL 4838843, at *5 (quoting *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991)). To justify a search based on consent, "the Government 'has the burden of proving that the consent was, in fact, freely and voluntarily given.'" *United States v. Price*, 558 F.3d 270, 277-78 (3d Cir. 2009) (quoting *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968)). Although there is "no talismanic definition of 'voluntariness,'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 224, (1973), factors to consider in determining whether consent was voluntary include: "the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment." *Price*, 558 F.3d at 278.

As consent is an exception to the warrant requirement, so is a "pat down" pursuant to a legitimate investigatory stop. Where a police officer believes criminal activity is afoot, "the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *Minnesota v. Dickerson*, 508 U.S. 366, 370, 372 (1993). And "'when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to

others,' the officer may conduct a pat-down search – without a warrant – in order to 'determine whether the person is in fact carrying a weapon.'"  *United States v. Scott*, 420 F. Supp. 3d 295, 308 (E.D. Pa. 2019) (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)), *aff'd*, 816 F. App'x 732 (3d Cir. 2020).

### b.    Application to the undisputed material facts

The Court begins with the claim that the June 15 search of Plaintiffs' home for weapons was an unlawful search under the Fourth Amendment.  The undisputed facts establish otherwise.  Specifically, Roeuth Morency voluntarily consented to the search of Plaintiffs' home.[31]  *See* Diehl SOMF ¶¶ 56-59.  According to Officer Blood's testimony, he and Officer Diehl explained to Mrs. Morency that her husband could not return home if there were firearms in the residence; they then entered the home after having "[a]sked permission first" and receiving it.  Officer Blood Deposition Transcript ("Blood Dep.") [ECF No. 54-8] at 37:20, 39:4-6.  Officer Diehl similarly testified that Mrs. Morency "did give us consent to go within the home."  Officer Diehl Deposition Transcript ("Diehl Dep.") [ECF No. 54-9] at 41:9-10.  No facts have been put forward to genuinely call into question these accounts.[32]  Indeed, this is precisely what the District Attorney's Office advised:  that as long as an adult occupant of Plaintiffs' home was present and they provided consent after the officers explained the situation, the officers could

---

[31]    Any argument forwarded by Plaintiffs that the search was unlawful because consent was not given by Michael Morency is without merit.  Roeuth Morency was capable of giving valid consent to the search, as she possessed "common authority over the premises.'"  *Zimmer*, 2017 WL 4838843, at *5

[32]    Even Roeuth Morency's testimony does not genuinely call the officers' accounts into question.  She testified that "after the officers arrived, I—they asked me, they said that they are here for the gun.  And I said, well, the gun is over there on the table," Roeuth Morency Deposition Transcript ("R. Morency Dep.") [ECF No. 54-14] at 24:12-15; and further, when asked "[d]id you tell them not to come in?", she testified "I don't recall that," *id*. at 25:13-14.

enter the home to locate firearms and discuss having them removed.[33]  Diehl SOMF ¶ 55.

Finally, in considering the facts discussed above with respect to voluntariness—the age,

education, and intelligence of the Roeuth Morency; whether she was advised of her

constitutional rights; the length of the encounter; the repetition or duration of the questioning;

and the use of physical punishment—the Court finds nothing in the undisputed factual record to

call into question or negate the apparent voluntariness of Mrs. Morency's consent to the search.

Officers Diehl and Blood are entitled to summary judgment as to this claim.

Turning to Michael Morency's claim for unlawful search stemming from the search of

his person at the time of his detainment by Sergeant Flores, the Court finds a total absence of

facts capable of supporting this claim.  Nothing in the undisputed facts as recounted above

establishes, or even hints, that Morency was searched at the time he was detained by Flores.

Sergeant Flores is entitled to summary judgment as to this claim on this basis alone.  *See Katz v.*

*Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) ("[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial.").  However, even it was established that Flores searched Morency at the time he

was detained or there was dispute as to this fact, Flores would still be entitled to summary

judgment.  As the Court has already determined, based on the information known to him,

Sergeant Flores had reasonable suspicion necessary to justify an investigative stop.  This same

information permitted Flores to conduct a "pat down" of Morency for firearms during his

questioning of him.  Indeed, in light of the particular charges pending against Morency and the

---

[33]     Moreover, for reasons already discussed, in seeking this guidance from the District
Attorney's Office and reasonably relying on it as Officers Diehl and Blood did, they would be
entitled to qualified immunity on this claim if the Court determined that there was a
constitutional violation or that there remained a genuine dispute as to whether there was a
constitutional violation.

prior day's events—all stemming from Morency's having drawn a firearm on a neighbor—a limited search of Morency's person for firearms was objectively appropriate and warranted under the circumstances.  Sergeant Flores is entitled to summary judgment as to this claim.

### 3.    *Claims premised on underlying constitutional violations*

Counts Seven, Eight, and Ten of the Second Amended Complaint assert claims for constitutional violations against the Allentown Police Chief in his official capacity, constitutional violations against the City of Allentown, and conspiracy to commit constitutional violations against the individual Defendants, respectively.  Counts Seven and Eight are in fact duplicative of one another.  Indeed, as the Court explained in its Opinion on Defendants' motion for judgment on the pleadings, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131 (D.N.J. 2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Therefore Counts Seven, Eight, and Ten of the SAC are together asserting two claims:  (1) a *Monell*[34] claim for municipal liability against the City of Allentown for the City's alleged violations of Michael Morency's constitutional rights; and (2) a claim against the individual Defendants for their participation in an alleged conspiracy to violate Morency's constitutional rights.

These claims fail as a matter of law for a simple reason:  the undisputed facts establish that Morency's constitutional rights were not violated.  A *Monell* claim and a conspiracy claim are derivative of an underlying constitutional violation; such a violation is a necessary element of both. *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 497 (W.D. Pa. 2018) ("[T]he

---

[34]    *Monell* refers to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), in which the Supreme Court recognized that under limited circumstances, municipal entities can be liable as "persons" for constitutional violations under 42 U.S.C. § 1983.

requirement of an underlying constitutional violation is implicit in the Third Circuit's *Monell*

framework."); *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014)

("In order to state a claim for conspiracy under section 1983, 'a plaintiff must establish (1) the

existence of a conspiracy involving state action; and (2) a deprivation of civil rights in

furtherance of the conspiracy by a party to the conspiracy.'" (quoting *Gale v. Storti,* 608 F. Supp.

2d 629, 635 (E.D. Pa. 2009))).  In the absence of an underlying constitutional violation, the

respective Defendants are entitled to summary judgment on these claims.[35]

> **4.     *The remaining claims:  loss of consortium and intentional infliction of emotional distress***

The two remaining claims in the Second Amended Complaint are loss of consortium as

asserted in Count Nine, and intentional infliction of emotional distress as asserted in Count

Eleven.  Like the SAC's other claims, these claims fail as a matter of law.

"A claim for loss of consortium is intended to compensate an aggrieved spouse for the

damaged marital expectations that result from injuries to his or her marital partner."[36]

*Saranchuk v. Lello*, No. CV 3:15-0893, 2017 WL 4573742, at *16 (M.D. Pa. Oct. 13, 2017)

(citing *Hopkins v. Blanco*, 457 Pa. 90, 93 (1974)), *on reconsideration*, No. CV 3:15-893, 2018

WL 4030687 (M.D. Pa. Aug. 23, 2018), *aff'd in part, vacated in part, rev'd in part*, 779 F. App'x

---

[35]     Additionally, with respect to the *Monell* claim, there have been no facts put forward to support that the City of Allentown has a policy or custom of violating the Fourth Amendment rights of its citizens.  The municipal policy element is the heart of a *Monell* claim.  *See Harris v. City of Philadelphia*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016) ("[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal policymaker." (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion))).

[36]     "There is no derivative claim under § 1983 for loss of consortium."  *Garcia v. Cty. of Bucks, PA*, 155 F. Supp. 2d 259, 264 (E.D. Pa. 2001).  Loss of consortium and intentional infliction of emotional distress sound in state law.

888 (3d Cir. 2019).  As with Morency's *Monell* and conspiracy claims, a claim for loss of

consortium is a derivative claim; in particular, it is derivative of the aggrieved partner's right to

recover.  *Saranchuk*, 2017 WL 4573742, at *16 ("[A] plaintiff [ ] cannot recover

for loss of consortium in the absence of the defendant's liability to his or her spouse."); *Little v.*

*Jarvis*, 280 A.2d 617, 620 (1971) ("[T]he well established rule [is] that the husband's rights are

only derivative of those of his wife in this situation.").  Because Michael Morency cannot

recover on any of his claims, his wife's claim for loss of consortium necessarily fails.

Defendants are entitled to summary judgment on this claim.

  "To recover for intentional infliction of emotional distress, a plaintiff must demonstrate

conduct by a defendant of 'an extreme and outrageous type.'"  *Sloan v. United States*, 603 F.

Supp. 2d 798, 806 (E.D. Pa. 2009) (quoting *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d

Cir. 1988)).  Specifically, "the conduct must be so extreme in nature as to go beyond all possible

bounds of decency such that it would be regarded as utterly intolerable to civilized society."

*McGee v. Conyngham Twp.*, No. 4:17-CV-01639, 2018 WL 2045437, at *8 (M.D. Pa. May 1,

2018) (quoting *Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999)).  Here,

there can be no question that based on the undisputed facts, Defendants' conduct does not rise to

the level of "extreme and outrageous."  This conclusion is consistent with the finding that

Defendants had probable cause to arrest and voluntary consent to search, the existence of which

authorized the conduct Morency complains of and precludes recovery for his several Fourth

Amendment claims.  Defendants are entitled to summary judgment as to this claim.

V.      **CONCLUSION**

For the reasons discussed above, the Court finds that Defendants are entitled to summary judgment on each count of the Second Amended Complaint.  Defendants' motions for summary judgment are therefore granted, and Plaintiffs' motion for summary judgment is denied.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.* _____
JOSEPH F. LEESON, JR.
United States District Judge