UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

MICHAEL RAYMOND MORENCY and   :
ROEUTH MORENCY, husband and wife,   :
          Plaintiffs,   :
                          :
          v.   :           No. 5:19-cv-5304
                          :
CITY OF ALLENTOWN, ALLENTOWN   :
POLICE DEPARTMENT, CHIEF OF   :
POLICE TONY ALSLEBEN, OFFICER   :
DIEHL, SERGEANT FLORES, and   :
OFFICER BLOOD,   :
          Defendants.   :

---

**O P I N I O N**

**Plaintiffs' Motion for Relief from Judgment, ECF No. 72—DENIED**

**Joseph F. Leeson, Jr.**                                       **November 17, 2020**
**United States District Judge**

## I.    INTRODUCTION

In an Opinion and Order dated October 2, 2020, this Court granted the motions for

summary judgment filed by Defendants in this action and denied the motion for summary

judgment filed by Plaintiffs. *See* ECF Nos. 69-70; *Morency v. City of Allentown*, No. 5:19-CV-

5304, 2020 WL 5868407 (E.D. Pa. Oct. 2, 2020). Plaintiffs had alleged myriad civil rights

violations stemming from the arrest and prosecution of Michael Morency[1] for simple assault and

disorderly conduct; these charges were eventually dropped. This Court's October 2, 2020

Opinion observed that in their motion papers, Plaintiffs had failed to file either a statement of

---

[1]    Except where otherwise noted, reference to "Morency" in the singular is intended to refer
to Michael Morency.

undisputed material facts ("SOMF") or a response to the Defendants' SOMFs.[2]  Plaintiffs'

motion and their opposition to Defendants' motions similarly failed to cite to the underlying

factual record.

On October 6, 2020, Plaintiffs filed a motion for relief from the Court's October 2 grant

of summary judgment in favor of Defendants.  *See* ECF No. 72.  In support of their motion,

Plaintiffs' counsel claims that although a SOMF in support of Plaintiffs' motion and a response

to Defendants' SOMFs were timely prepared, they were not filed due to a clerical oversight

within counsel's office.[3]  All Defendants oppose Plaintiffs' motion for relief from judgment.[4]

*See* ECF Nos. 75-76.

Upon consideration of Plaintiffs' motion for relief from judgment and Defendants'

opposition thereto, and for the reasons explained below, Plaintiffs' motion is denied.

## II.      BACKGROUND

### A.      The Court's Summary Judgment Opinion

This Court's October 2, 2020 Opinion granting Defendants summary judgment reasoned

as follows.  Initially, the Court observed that Plaintiffs had failed to file either a SOMF or a

response to Defendants' SOMFs, and Plaintiffs' motion papers generally failed to cite to the

underlying factual record.  *Morency*, 2020 WL 5868407, at *5.  On this issue, the Court

concluded that

> [t]he deficiencies in Plaintiffs' summary judgment filings directly contravene the
> directives of Rule 56, this Court's Policies and Procedures, and the Court's Rule 16
> Scheduling Order . . . .  Therefore, in the absence of "a separate, short, and concise

---

[2]      "SOMFs" refers to the two statements of undisputed material facts filed by the
Defendants.

[3]      Plaintiffs' SOMF ("Pls.' SOMF"), and responses to Defendants' SOMFs, are attached as
exhibits to the motion for relief from judgment.  *See* ECF Nos. 72-5, 72-7, and 72-8.

[4]      As with their motion for summary judgment, Plaintiffs have not filed a reply
memorandum in further support of their motion for relief from judgment.

statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," as well as "a separate, short, and concise statement responding to the numbered paragraphs set forth in the [Defendants'] statement[s] of undisputed facts," the Court must limit its consideration of material facts to those put forward by Defendants.

*Id.* (quoting Leeson, J., Policies and Procedures §§ (II)(F)(8)-(9) ("The Court will not consider a factual assertion that is not supported by a citation to the record. . . . All facts set forth in the moving party's statement of undisputed facts shall be deemed admitted unless controverted."); citing FED. R. CIV. P. 56(c)(3) (providing that "[t]he Court need consider only the cited materials"); FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .")).

Accepting as true those facts put forward by Defendants that were supported by record citations, the Court ultimately concluded that each of the twelve claims raised in Plaintiffs' Second Amended Complaint ("SAC") failed as a matter of law. The Court briefly summarizes its conclusions as to each claim below.[5]

As to Michael Morency's claim of false arrest against Officer Blood (Count Two of the SAC), the Court found that "[b]ased upon his investigation with Officer Diehl, there can be no dispute that Officer Blood had probable cause to believe that Morency had committed each of the charged offenses." *Morency*, 2020 WL 5868407, at *7. In particular, Officers Diehl and Blood learned of the alleged events of the night of the incident between Michael Morency and his neighbors—Hector Sanchez and his son—as well as other pieces of information, (1) directly from Hector Sanchez and his son, (2) from neighborhood children present at the incident, (3) from a firearm registry search, and (4) through their own observations made at the scene of the

---

[5]      The Court assumes the parties' familiarity with the case's underlying factual background.

incident.  *See id.*  "Finally, because when they tried to talk to him, Morency told the officers to leave and then shut and locked his door, Blood and Diehl were not able to get Morency's side of the story to negate any of the . . . allegations."  *Id.*  Accordingly, the Court concluded that based on the information he and Diehl obtained through their investigation, Officer Blood had probable cause to seek an arrest warrant charging Morency with (1) Simple Assault under 18 Pa. Cons. Stat. § 2701(a)(1); (2) Simple Assault under 18 Pa. Cons. Stat. § 2701(a)(3); and (3) Disorderly Conduct under 18 Pa. Cons. Stat. § 5503(a)(4).  *Id.*

"Having determined that [1] Officer Blood possessed probable cause to swear out an affidavit of probable cause and pursue an arrest warrant for the charged offenses and [2] he therefore cannot be liable for a claim of false arrest," the Court then "dispense[d] with Morency's other false arrest, false imprisonment, and malicious prosecution claims as they appear in Counts One, Three, Four, and Five of the SAC."[6]  *Morency*, 2020 WL 5868407, at *9.

Counts Four and Five of the SAC alleged false arrest and false imprisonment against Sergeant Flores, the officer who effectuated Michael Morency's arrest.  The Court found that in light of the undisputed factual record, there could "be no dispute that Flores did not violate Morency's Fourth Amendment rights by detaining him prior to an arrest warrant issuing—whether for a mere investigatory stop or a true custodial arrest."  *Morency*, 2020 WL 5868407, at *9.  Specifically, the Court noted that the relevant inquiry for Fourth Amendment purposes is not whether an arrest warrant had issued—Morency alleged Flores detained him prior to an arrest warrant issuing—but rather, whether an officer in Flores's position would have had the requisite level of information for the detainment:  information capable of supporting either reasonable

---

[6]     The absence of probable cause is a necessary element of false arrest, false imprisonment, and malicious prosecution.  The existence of probable cause for each charged offense therefore forecloses the possibility of success on these claims.

suspicion for an investigatory stop, or probable cause for an arrest.  *Id.* at \*10.  The Court

concluded that based on the information available to an officer in Flores's position at the time of

Morency's detainment—which would have been learned from information at that morning's

"roll call" at the police station, as well as information obtained during a pre-stop investigation—

Flores had the requisite level of information to effectuate either an investigatory stop or a full

arrest, even without a warrant.  *Id.*  Both Morency's claims of false arrest and false imprisonment

against Flores therefore failed.

The Court also determined that based on the factual record there could be no dispute that

Blood and Flores were entitled to qualified immunity on Counts One through Five of the SAC—

in particular, based on the guidance provided by an ADA regarding the existence of probable

cause to arrest Morency.  *See Morency*, 2020 WL 5868407, at \*11.

Counts Six and Twelve of the SAC asserted claims of unlawful search under the Fourth

Amendment for Sergeant Flores's alleged search of Morency's person at the time of his

detainment, and the search of Plaintiffs' home.  As to the search of Plaintiffs' home, the Court

concluded that the factual record unequivocally indicated that Roeuth Morency consented to the

search of the home, and there could consequently be no Fourth Amendment violation.  *See*

*Morency*, 2020 WL 5868407, at \*13.  As to the alleged search of Morency's person, the Court

noted that nothing in record suggested or even hinted that Morency was searched at the time of

his detainment.  *See id.*  However, if it were established that he was searched, "Flores would still

be entitled to summary judgment. . . . [B]ased on the information known to him, Sergeant Flores

had reasonable suspicion necessary to justify an investigative stop. This same information

permitted Flores to conduct a 'pat down' of Morency for firearms during his questioning of

him."[7]  *Id.*

Counts Seven, Eight, and Ten of the SAC asserted claims premised on underlying

constitutional violations:  *Monell* claims for municipal liability and a conspiracy claim,

specifically.  The Court concluded that Defendants were entitled to summary judgment on these

claims because the factual record left no doubt that there were no underlying constitutional

violations, and without any underlying constitutional violations, these derivative claims

necessarily failed.  *See Morency*, 2020 WL 5868407, at *13-*14.

Finally, as to the two remaining claims contained in the SAC—Counts Nine and Eleven,

loss of consortium and intentional infliction of emotional distress—these claims similarly failed.

Because loss of consortium is also a claim derivative of an underlying cause of action, and

because Plaintiffs had no viable underlying causes of action, this claim was not viable on the

factual record.  *See Morency*, 2020 WL 5868407, at *14.  As to the claim of intentional infliction

of emotional distress, the Court found that the undisputed facts simply precluded any inference

that the requisite standard—conduct by a defendant of an extreme and outrageous type—could

be met, especially in light of the finding that the Defendants had probable cause to arrest and

prosecute Morency for the charged offenses.  *Id.*

### B.    Plaintiffs' Motion for Relief from Judgment

According to Plaintiffs' counsel, "[o]n August 7, 2020, after finalizing the last changes

and corrections to the Petition for Summary Judgment, Brief in Support of Motion for Summary

---

[7]    The Court further noted as follows:  "Indeed, in light of the particular charges pending
against Morency and the prior day's events—all stemming from Morency's having drawn a
firearm on a neighbor—a limited search of Morency's person for firearms was objectively
appropriate and warranted under the circumstances.  Sergeant Flores is entitled to summary
judgment as to this claim."  *Id.*

Judgment and Plaintiffs' Statement of Undisputed Facts, counsel for Plaintiffs instructed his

paralegal to file all documents on the docket."  Plaintiffs' Motion for Summary Judgment ("Pls.'

Mot."), ECF No. 72 ¶ 3.  Plaintiffs further state that "[a]fter receiving Defendants' Motion for

Summary Judgment on August 7, 2020, counsel for Plaintiff [sic] began preparing the response. .

. . All responses and the Statement of Undisputed Facts in Response to Defendants' Motions

were in fact complete on August 25, 2020."  *Id*. ¶¶ 7-8.  Despite confirming with his paralegal

that all documents would be timely filed, Plaintiffs' counsel states that his paralegal "simply

missed the filing of the responses to and undisputed statement of facts, a situation that has never

happened in the past."  *Id*. ¶ 10.  According to the motion, "[i]t is also clear . . . that [counsel]

should have followed up to make sure that everything was filed. . . . This most likely would have

served as a double check."  *Id.* ¶ 11.  After this Court's Opinion and Order were issued,

Plaintiffs' counsel and his paralegal "reviewed the docket together and discovered that the

Statement of Undisputed Facts had not, in fact, been filed."  *Id.* ¶ 15.

Plaintiffs ask for an Order of relief from Judgment under "Federal Rule of Civil

Procedure 60(a) or (b)(1) or (b)(6) for clerical error or mistake, inadvertence, surprise, excusable

neglect or any other reason that justifies relief."  Plaintiffs' Memorandum in Support of their

Motion for Relief from judgment ("Pls.' Mem."), ECF No. 72-2, at 5.  The Court will briefly

address Plaintiffs' arguments in support of each basis of relief sought.

In support of their request for relief based on Rule 60(a), "Corrections Based on Clerical

Mistakes; Oversights and Omissions," Plaintiffs' counsel states "that the actual filings in the

office, while prepared by and reviewed by the attorney . . . are actually filed by" the paralegal.

Pls.' Mem. at 6.  Counsel represents that he "has worked with [his paralegal] for over ten (10)

years and has never, ever been aware of a missed filing."  *Id*. at 7.  "Counsel for Plaintiffs argues

that this is a circumstance where a clerical error was made," and asks that relief be granted under Federal Rule of Civil Procedure 60(a) accordingly.  *Id.*

In support of their request for relief under Rule 60(b)(1), "mistake, inadvertence, surprise, or excusable neglect," Plaintiffs' counsel states that while the motion is being brought on behalf of Plaintiffs, "it is not the Plaintiffs who made a mistake, did something inadvertent or committed excusable neglect.  It is fair to say Plaintiffs may very well be surprised.  In this motion there are two (2) culprits neither of which are the Plaintiff's [sic]"—*i.e.*, counsel and his paralegal.  Pls.' Mem. at 8-9.  Counsel intimates that due to a personal vacation he had planned, he failed to double check that all relevant documents were in fact filed.  *See id.* at 9-10.  He further argues that failure to grant relief would unfairly prejudice Plaintiffs and granting relief would not unduly burden Defendants.  *See id.* at 10.  Finally, states that neither he, his paralegal, nor Plaintiffs have acted in bad faith.  *See id*. at 11.

As to their request for relief pursuant to Rule 60(b)(6), "any other reason that justifies relief," Plaintiffs' motion does not offer any independent argument.

## III.   DISCUSSION

### A.      Relief under Federal Rule of Civil Procedure 60(a)

Plaintiffs first seek relief under Rule 60(a) of the Federal Rules of Civil Procedure.  Rule 60(a) provides as follows:

> (a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

Rule 60(a) "is limited to the correction of 'clerical mistakes'; it encompasses only errors 'mechanical in nature, apparent on the record, and not involving an error of substantive

judgment.'"  *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 129-30 (3d Cir. 2005) (quoting *Mack Trucks, Inc. v. Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am., UAW*, 856 F.2d 579, 593 n.16 (3d Cir. 1988)).  Rule 60(a) generally applies as a remedy to correct the court's own mistakes.  *Days Inns Worldwide, Inc. v. JPM, Inc.*, No. CIV. 13-3017, 2015 WL 5474882, at *3 (D.N.J. Sept. 15, 2015).  "The test for the applicability of Rule 60(a) is whether the change sought affects the substantive rights of the parties."  *Lawn Doctor, Inc. v. Rizzo*, No. CIV.A. 12-1430, 2015 WL 4320887, at *2 (D.N.J. July 14, 2015), *aff'd*, 646 F. App'x 195 (3d Cir. 2016).  The rule "was adopted to make clear that courts can 'correct judgments which contain clerical errors, or judgments which have been issued due to inadvertence or mistake.'"  *Days Inns Worldwide, Inc.*, 2015 WL 5474882, at *3 (quoting *In re FleetBoston Fin. Corp. Sec. Litig.,* No. 02–cv–4561, 2007 WL 4225832, at *4 (D.N.J. Nov.28, 2007)).

Rule 60(a) does not provide a cognizable remedy based on the circumstances underlying Plaintiffs' motion.  First, Plaintiffs are not seeking to correct a mistake of the Court, but rather, an "error" in a decision of the Court—that summary judgment issued in Defendants' favor— which counsel sees as resulting from *his own* filing omissions.[8]  *See Days Inns Worldwide, Inc.*, 2015 WL 5474882, at *3.  Perhaps more importantly, Plaintiffs are seeking a change that would necessarily "affect[ ] the substantive rights of the parties."  *Lawn Doctor, Inc.*, 2015 WL 4320887, at *2.  As such, Rule 60(a) is not an appropriate vehicle for the relief Plaintiffs seek.[9]

---

[8]      However, as explained more fully in the context of Rule 60(b)(6), even but for counsel's omissions, the results of the cross-motions for summary judgment would not be different.

[9]      An example of an error appropriately correctable by Rule 60(a) would be "a copying or computational mistake . . . . As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed."  *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 200 F. App'x 95, 104 (3d Cir. 2006) (quoting *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 130 (3d Cir. 2005)).

B.        **Relief under Federal Rule of Civil Procedure 60(b)**

Plaintiffs also seek relief from judgment under Federal Rule of Civil Procedure 60(b)(1)

and 60(b)(6).  Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party

or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; . . . [or] (6) any other reason that

justifies relief."  "[T]he party 'who seeks such extraordinary relief from a final judgment bears a

heavy burden.'"  *Taylor v. Harrisburg Area Cmty. Coll.*, No. 1:12-CV-0169, 2014 WL 866491,

at *3 (M.D. Pa. Mar. 5, 2014) (quoting *Pilsco v. Union R.R. Co.,* 379 F.2d 15, 17 (3d Cir. 1967)),

*aff'd*, 579 F. App'x 90 (3d Cir. 2014).  The decision to grant or deny relief pursuant to Rule 60(b)

lies in the "sound discretion of the trial court guided by accepted legal principles applied in light

of all the relevant circumstances."  *Ross v. Meagan,* 638 F.2d 646, 648 (3d Cir. 1981).

"Courts generally construe averments of attorney deficiencies as insufficient to justify

relief under Rule 60(b)(1)."  *Dively v. Seven Springs Farm, Inc.*, No. CIV.A. 3:10-126, 2012 WL

5818319, at *2 (W.D. Pa. Nov. 15, 2012) (citing *Latshaw v. Trainer Wortham & Co., Inc.,* 452

F.3d 1097, 1101 (9th Cir. 2006)).[10]  Moreover, as the Rule's plain language makes clear, for

relief under 60(b)(1) to be available based on a theory of attorney neglect, the neglect must be

---

[10]        In *Latshaw*, the Ninth Circuit explained as follows:

> For purposes of subsection (b)(1), parties should be bound by and accountable for
> the deliberate actions of themselves and their chosen counsel. This includes not
> only an innocent, albeit careless or negligent, attorney mistake, but also intentional
> attorney misconduct.

*See also Cottrell v. Good Wheels*, No. CIV. 08-1738, 2011 WL 3361522, at *6 (D.N.J. Aug. 3,
2011) ("Plaintiff's counsel's mistake is not a special circumstance that justifies the extraordinary
relief afforded by Rule 60(b)."), *aff'd*, 458 F. App'x 98 (3d Cir. 2012); *McCormick v. City of
Chicago,* 230 F.3d 319, 327 (7th Cir. 2000) (explaining that "neither ignorance nor carelessness
on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)").

*excusable. See Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007) ("We cannot conclude the

Commonwealth's failure . . .was excusable."), *as amended* (June 12, 2007).  However, some

courts have found that attorney neglect that is inexcusable, and therefore not appropriate to

remedy under Rule 60(b)(1), may be remedied under Rule 60(b)(6).  *See Adams v. Cty. of Erie,*

*Pa.*, No. 1:07-CV-316, 2012 WL 4483429, at *4 (W.D. Pa. Sept. 27, 2012) (differentiating

between bases for relief under Rule 60(b)(1) and 60(b)(6) and stating that unlike excusable

neglect, "actions by counsel that constitute inexcusable 'gross negligence' can be 'exceptional

circumstances' justifying relief under Rule 60(b)(6)") (citation omitted); *aff'd*, 558 F. App'x 199

(3d Cir. 2014); *see*, *e.g.*, *Boughner v. Sec'y of Health, Ed. & Welfare, U. S.*, 572 F.2d 976, 978

(3d Cir. 1978) ("The record before us does not show circumstances indicating any mistake,

inadvertence, surprise or excusable neglect and therefore we do not find Rule 60(b)(1)

applicable. We reverse, however, on the basis that the motion to vacate should have been granted

under Rule 60(b)(6). The conduct of Krehel indicates neglect so gross that it is inexcusable.").[11]

The Court does not need to determine whether the failures of Plaintiffs' counsel in this

case are properly considered "excusable," potentially entitling Plaintiffs to a remedy under Rule

60(b)(1), or "inexcusable," likely foreclosing a remedy under Rule 60(b)(1) but perhaps entitling

Plaintiffs to a remedy under Rule 60(b)(6).  This is because the Court has, in its discretion,

undertaken a review of Plaintiffs' belated summary judgment filings, and finds that these filings

fail to raise a triable issue of fact.  That is, even if Plaintiffs' SOMF and responses to

---

[11]     Additionally, "[d]espite the open-ended nature of [Rule 60(b)(6)], a district court may
only grant relief under Rule 60(b)(6) in 'extraordinary circumstances where, without such relief,
an extreme and unexpected hardship would occur.'" *Satterfield v. Dist. Attorney Philadelphia*,
872 F.3d 152, 158 (3d Cir. 2017) (quoting *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014)).

Defendants' SOMFs were timely filed, the outcome of the summary judgment motions would

not have been any different.[12]

### 1.    Facts asserted in Plaintiffs' SOMF

The purported factual averments contained in Plaintiffs' SOMF—which are also

presented as additional material facts in Plaintiffs' responses to Defendants' SOMFs—can be

summarized as follows.[13]

- Officer Diehl testified that there was no search warrant for the search of Plaintiffs' home and no right in his opinion to ask for one; Officer Blood also testified there was no search warrant.  Pls.' SOMF ¶¶ 1-2, 6.

- Officer Blood testified that he "was along for the ride" when he went with Officer Diehl to search Plaintiffs' come, that Allentown police officers do not enforce bail conditions, and that the judge requested they go to Plaintiffs' home to speak with Roeuth Morency about obtaining Michael Morency's other firearms so he could return home.  *Id*. ¶ 5.

- Officer Diehl testified that when he and Blood went to Plaintiffs' home, that was the first time Mrs. Morency may have learned of her husband's arrest; at that time they explained the purpose of their visit as directed by the judge; and to Officer Diehl, Mrs. Morency seemed "a little discombobulated" by the officers' presence at her home.  *Id*. ¶¶ 8-10, 14.

- Roeuth Morency testified as follows regarding the search of her home:

    > A.    Okay. Well, after the officers arrived, I – they asked me, they said that they are here for the gun. And I said, well, the gun is over there on the table. And then the next thing, they just come in the house and checked the gun out and took out the ammunition. I mean, the – the sleeves.

---

[12]    Viewed in the context of Rule 60(b)(6)'s requirement of "extreme and unexpected hardship," Plaintiffs here will not suffer this type of hardship because failure to grant the motion yields the same result as if counsel had timely filed the missing documents in the first place.

[13]    These are presented in the order in which they appear in Plaintiffs' SOMF.  Many of the purportedly material "facts" presented in Plaintiffs' SOMF are simply not material; the Court therefore limits in recitation here to those than can arguably (although, as explained, not necessarily) be considered material to Plaintiffs' claims and that are not duplicative.  The Court similarly does not recite facts here that are not properly supported by record citations. Additionally, where Plaintiffs' characterization of deposition testimony is inaccurate, the Court recites the testimony itself.

> Q.      The magazine?
>
> A.      Yeah. Yeah. The magazine out of the gun and put it
> on the table. And after that they told me that they have to
> search the house, procedures kind of thing. If they don't then
> Michael still won't be – won't be released in jail. I don't
> know what to do. So I just – had no choice.

*Id.* ¶ 15.

- Officer Blood testified that a firearm registration report indicated that Michael Morency owned two pistols.  Roeuth Morency didn't know of any other guns in the home and told the officers that; the officers searched the rest of the home and took pictures of a gun found in a gun safe in the basement.  *Id.* ¶¶ 17-19.

- Regarding the investigation of the incident between Michael Morency and Hector Sanchez's son, Officer Blood spoke to Hector Sanchez, who had no first-hand knowledge of the incident; his son did not end up needing medical care as a result of the incident.  *Id.* ¶¶ 28-29.

- Officer Blood testified that according to his questioning of Hector Sanchez, Morency was on his porch when he displayed the firearm and Hector Sanchez was either on the sidewalk or the grass next to the sidewalk in Morency's yard, but Officer Blood could not recall which precise location it was.  *See id.* ¶¶ 30-31.

- Sentence 4 of the affidavit of probable cause completed by Officer Blood states that a juvenile was pushed twice causing him to strike the sidewalk; Hector Sanchez's victim statement to the police does not mention his son striking the sidewalk or being pushed twice.  *Id.* ¶ 35.

- Sentence 6 of the affidavit of probable cause states that Morency pulled a revolver and instructed Hector Sanchez not to come onto his property; Hector Sanchez's victim statement states that Sanchez was told to "step off his property."  *Id.* ¶ 36.

- Sentence 7 of the affidavit of probable cause states that Hector Sanchez was not on Morency's property at the time of the confrontation and was on the sidewalk; Hector Sanchez's victim statement does not state that Sanchez was on the sidewalk.  *Id.* ¶ 37.

- Regarding Morency's detainment and arrest the day after the incident, Sergeant Flores was aware at the time of the initial detainment that an arrest warrant had not yet issued but that one would be issuing momentarily.  *See id.* ¶¶ 42-44.[14]

---

[14]      The remainder of the purported facts in Plaintiffs' SOMF pertain to the alleged existence of municipal liability.  Because the Court finds that Plaintiffs' facts do not raise a triable issue as

##### 2.     *Plaintiffs' SOMF does not raise a genuine factual dispute as to any of the dispositive legal issues*

Having reviewed the purported material facts put forward in Plaintiffs' SOMF and responses to Defendants' SOMFs, as submitted with the instant motion,[15] the Court concludes that none of Plaintiffs' properly supported factual assertions are able to alter the several legal conclusions that are dispositive of all of Plaintiffs' claims:  (1) based on the information available to Officer Blood, he had probable cause to pursue an arrest warrant for the charged offenses; (2) based on the information available to Sergeant Flores, he had the requisite level of information to effectuate either an investigatory stop or a full arrest—*i.e.*, information capable of supporting either reasonable suspicion or probable cause; and (3) Roeuth Morency provided consent for the search of her home for her husband's firearms.  The Court will briefly address each of these conclusions in light of Plaintiffs' SOMF.

None of the additional facts put forward by Plaintiffs raise a genuine dispute about whether Officer Blood had probable cause to pursue an arrest warrant for the charged offenses. It was never disputed, nor is it material, that Hector Sanchez did not have first-hand knowledge of the incident between Morency and Sanchez's son; it is similarly immaterial that his son did not end up needing medical attention.  *See* Pls.' SOMF ¶¶ 28-29.  That the affidavit of probable cause states Hector Sanchez was on the sidewalk also fails to raise a genuine dispute as to probable cause.  Blood testified that Sanchez stated he was either on the sidewalk or the small patch of grass next to the sidewalk—a conclusion not inconsistent with the affidavit.  *See id.* ¶¶ 30-31, 37.  Similarly unpersuasive is the absence of the details of Sanchez's son being pushed

---

to the existence of any underlying constitutional violations, the Court does not recite the allegations relative to municipal liability here.

[15]     Plaintiffs do not dispute (or properly dispute) the vast majority of the material facts put forward by Defendants.  *See* ECF Nos. 72-7, 72-8.

"twice" and striking the sidewalk in the victim statement.  *See id.* ¶ 35.  There is no evidence

that this information could not have been and was not gained through Blood and Diehl's

questioning of Sanchez and his son rather than Sanchez's victim statement.  Moreover, there is

no dispute that physical contact was made between Morency and Sanchez's son.  Finally—and

crucially—it is not disputed that Morency refused to give his side of the story to police the night

of the incident,[16] leaving the officers with a one-sided account.

In sum, even considering Plaintiffs' SOMF, the conclusion reached in this Court's

October 2, 2020 Opinion as to probable cause is not altered.  Based on the information Officers

Blood and Diehl had through their investigation, Officer Blood had probable cause to believe

that Morency "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily

injury to another," 18 Pa. Cons. Stat. § 2701(a)(1); [17] that he "attempt[ed] by physical menace to

---

[16]      In their SOMF, Plaintiffs aver that "[s]entence 11 [of the affidavit of probable cause]
states [Morency] refused to speak with officers but officer Blood, the investigating officer,
testified he never tried to speak with Plaintiff Husband."  Pls.' SOMF ¶ 40.  The fact that
Morency refused to talk to Officer Diehl rather than Officer Blood does not raise a genuine
dispute that Michael Morency refused to give his side of the story to police the night of the
incident.  This cannot be disputed.

[17]      Section 2701 was derived from Section 211.1 of the Model Penal Code.  The committee
notes accompanying Section 211.1 of the MPC state as follows:  "This section eliminates the
common law distinctions between assault, battery and mayhem and classifies the crimes on the
basis of the seriousness of the harm done, intended or risked."  Consistent with § 2701's
elimination of the distinction between "assault" and "battery," it follows that minimal contact is
sufficient to satisfy the *actus reus* component of simple assault.  *See Com. v. Gregory*, 132 Pa.
Super. 507, 512, 1 A.2d 501, 503 (1938) ("The least touching of another's person willfully, or in
anger, is a battery. . . . [T]he touching of, or injury to, another must be done in an angry,
revengeful, rude or insolent manner so as to render the act unlawful" (quotations and citations
omitted)); *Com. v. Shamsud-Din*, 2010 Pa. Super. 995 A.2d 1224, 1230 (2010) (affirming
conviction for simple assault where the defendant and another "were like tussling").  With
respect to the required *mens rea*, a "Pennsylvania simple assault violation requires a minimum
*mens rea* of recklessness rather than intent."  *United States v. Otero*, 502 F.3d 331, 335 (3d Cir.
2007).  The undisputed facts here, even considering Plaintiffs' SOMF, support both the
minimum *actus reus* element—bodily injury (minimal contact)—as well as the minimum *mens
rea* element—recklessness, under § 2701(a)(1).

put another in fear of imminent serious bodily injury," 18 Pa. Cons. Stat. § 2701(a)(3);[18] and

that, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk

thereof, he . . . create[d] a hazardous or physically offensive condition by any act which serve[d]

no legitimate purpose of the actor," 18 Pa. Cons. Stat. § 5503(a)(4). *Morency*, 2020 WL

5868407, at *8.[19]

Turning to the issue of Sergeant Flores's detainment and arrest of Morency the day

following the incidents, there are almost no facts asserted in Plaintiffs' SOMF on this issue, let

alone facts that would raise a genuine dispute as to whether an officer in Flores's position would

have had the minimum level of information to effectuate either an investigative stop or an arrest.

The reasoning of the Court's October 2 Opinion on this point, which concluded that Flores had a

sufficient level of information to effect either an investigative detainment or a full arrest even

without a warrant—reasonable suspicion or probable cause, respectively—remains unaltered in

light of Plaintiffs' SOMF.

Finally, on the issue of Roeuth Morency's consent to the search of her home for her

husband's firearms, the Court similarly finds that Plaintiffs' SOMF fails to indicate the existence

of a genuine dispute of material fact.  Indeed, the Court's October 2 Opinion took into account

Roeuth Morency's version of events and found that there was no support for the contention that

she did not consent to the search of her home.  *See Morency*, 2020 WL 5868407, at *13 n.32

("Even Roeuth Morency's testimony does not genuinely call the officers' accounts into question.

---

[18]     *See Fitzgerald v. Cty. of Lehigh*, 381 F. Supp. 3d 443, 457 (E.D. Pa. 2019) ("One is not required to 'point or shoot a firearm in order to be found guilty of simple assault by physical menace.'" (quoting *Commonwealth v. Olsen*, No. 1861 WDA 2016, 2017 WL 6523267, at *4 (Pa. Super. Dec. 21, 2017))).

[19]     The Court refers the parties to the Court's original Opinion for a full account of the reasoning underlying this conclusion.

She testified that "after the officers arrived, I—they asked me, they said that they are here for the gun. And I said, well, the gun is over there on the table," Roeuth Morency Deposition Transcript ("R. Morency Dep.") [ECF No. 54-14] at 24:12-15; and further, when asked "[d]id you tell them not to come in?", she testified "I don't recall that," *id.* at 25:13-14."). Simply put, there is no affirmative evidence that Plaintiffs advance to genuinely dispute that Roeuth Morency consented to the search of her home. This absence of evidence is especially glaring in light of the clear evidence to the contrary.[20] *See id.* at 13 ("According to Officer Blood's testimony, he and Officer Diehl explained to Mrs. Morency that her husband could not return home if there were firearms in the residence; they then entered the home after having "[a]sked permission first" and receiving it. Officer Blood Deposition Transcript ("Blood Dep.") [ECF No. 54-8] at 37:20, 39:4-6. Officer Diehl similarly testified that Mrs. Morency "did give us consent to go within the home." Officer Diehl Deposition Transcript ("Diehl Dep.") [ECF No. 54-9] at 41:9-10.").

The three above conclusions—(1) Officer Blood had probable cause to pursue an arrest warrant for Morency for the three charged offenses; (2) Sergeant Flores had reasonable suspicion or probable cause to detain or arrest Morency the day after the incident, even without a warrant; and (3) Mrs. Morency consented to the search of her home—are dispositive of all Plaintiffs' claims. That is, without a genuine dispute of fact as to any of them, the viability of each of Plaintiffs' claims of individual constitutional violations fail for the reasons set forth in the

---

[20]   Moreover, Plaintiffs' apparent argument that the search of the home was beyond the scope of Roeuth Morency's consent is not supported by the facts. *See* Blood Dep. at 39-40 ("Before entering, again because I was training, we have her sign a consent to search form, which read out -- she read it and I believe Officer Diehl read it to her. She signed it and then she pointed to where it's either upstairs in their room or downstairs in the basement. And those are the only two places that we went."). Plaintiffs fail to point to any evidence to dispute that Mrs. Morency consented to the search of the upstairs and basement of her home; indeed, they do not even assert this as a purported material fact. *See* Pls.' SOMF ¶¶ 20-25.

Court's October 2, 2020 Opinion.[21]  And with no underlying constitutional violations, Plaintiffs'

derivative constitutional claims—for municipal liability and conspiracy—necessarily fail.[22]

Therefore, even upon consideration of Plaintiffs' summary judgment filings at this late date to

the extent permitted by Rule 60(b), the Court finds that its original findings and conclusions as

contained in the October 2, 2020 Opinion remain unaltered.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds that Plaintiffs have failed to satisfy the

heavy burden necessary for relief under either Federal Rule of Civil Procedure 60(a), 60(b)(1), or

60(b)(6) from this Court's grant of summary judgment in favor of the Defendants.  In particular,

the Court finds that even upon consideration of Plaintiffs' untimely summary judgment filings,

these filings do not raise a genuine dispute of material fact as to any of Plaintiffs' claims.  Had

Plaintiffs' omitted documents been timely filed, they would not have altered the Court's legal

findings and conclusions.  Relief from judgment under Rule 60(b) is therefore unwarranted.

Plaintiffs' motion for relief from this Court's October 2, 2020 grant of summary judgment in

favor of Defendants is denied.

A separate Order follows this Opinion.

BY THE COURT:


/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge

---

[21]    Although it is not addressed here, in the Court's view, there can also be no doubt that the
purportedly material facts asserted by Plaintiffs in their SOMF do nothing to deprive the
individual Defendants of an entitlement to qualified immunity.  *See Morency*, 2020 WL
5868407, at *11.
[22]    Additionally, nothing in the Plaintiffs' SOMF does anything to make viable an
intentional infliction of emotional distress claim, which requires "extreme and outrageous"
conduct.  *Sloan v. United States*, 603 F. Supp. 2d 798, 806 (E.D. Pa. 2009).